WESTERN COMMERCIAL TRAVELERS ASSOCIA-
TION, Plaintiff, v. TENNENT, Appellant; TEN-
NENT et al., Respondents.

**St. Louis Court of Appeals, December 17, 1907.**

1. **FRATERNAL BENEFIT ASSOCIATIONS: Lodge System and
   Ritual: Constituent Elements.** A commercial travelers' asso-
   ciation incorporated under the act of 1879 (Laws of 1879, p.
   65), and organized for the purpose, among others, of providing
   sums to pay death losses for the benefit of its members, which
   had no lodge system or ritualistic form of work, and did not
   amend its charter so as to bring itself under the act of 1897,
   was not a fraternal benefit association within the meaning of
   section 1408, Revised Statutes, 1899.

2. ————: ————: **Statutory Amendment.** The amendment of
   section 1423, Revised Statutes 1899, made in 1901, providing that
   associations of commercial travelers should be subject to the
   provisions of that act, did not make such associations fraternal
   beneficiary associations.

3. ————: **Mutual Benefit Societies: Statutory Amendment.** An
   association of commercial travelers organized under the law
   enacted in 1879, which was not a fraternal beneficiary associa-
   tion within the meaning of section 1408, Revised Statutes 1899,
   because it had not a lodge system or ritualistic form of work,
   did not forfeit its charter nor was it converted into an old line
   insurance company by reason of failure to  comply  with the
   Laws of 1897; it remained a mutual benefit association doing
   business on the assessment plan and was restricted in its ben-
   eficiaries to the families, widows, orphans and other dependents
   of members.

4. **MUTUAL BENEFIT  SOCIETY:  Beneficiaries:  "Families."**
   The mother of a member of a mutual benefit society was not
   a member of his "family," within the  meaning  of the law of
   1879, where she lived with her own husband, although the lat-
   ter was out of employment and had failed in business and the
   member contributed to their support.

5. ————: ————: **"Dependent."** A member of a mutual benefit
   society was a traveling man, had no  settled  place of abode,
   lived apart from his wife and child to whose support he con-
   tributed nothing, and occasionally visited his mother and fath-
   er and gave sums of money to the mother for her support, the
   mother was not "dependent" upon him within the meaning of
   the law so as to make her entitled to the proceeds of his bene-
   fit certificate in her favor on his death, as against the wife and
   child.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

AFFIRMED.

*Kinealy & Kinealy* for respondent, Christina May Tennent.

(1)   The constitution of the Western Commercial Travelers' Association does not provide for "blood relatives" as a class of beneficiaries, and therefore Mrs. Louisa H. Tennent was not a qualified beneficiary merely because she was the mother of deceased, because: (a) The association is not a "fraternal beneficiary association" as defined by the Missouri Statutes. Westerman v. Sup. Lodge K. of P., 196 Mo. 670; Tice v. Supreme Lodge, 100 S. W. 519; City of Brookfield v. Kitchen, 163 Mo. 546.   (b)   Even if the association answered all the requirements of the statute defining fraternal beneficiary associations, except as to the classes of persons who may be beneficiaries, the beneficiary would nevertheless have to be within the classes provided for by the charter, constitution or by-laws of association.   Schmidt v. United Order of Foresters, 101 S. W. 624; Baltzell v. Modern Woodmen, 98 Mo. App. 153; Herzberg v. Brotherhood, 110 Mo. App. 328; Purdy v. Bankers' Life Assn., 101 Mo. App. 102; Boward v. Bankers' Union, 94 Mo. App. 442; Whitehead v. Tapp, 69 Mo. 415; Brown v. Brown's Admr., 68 Mo. 388.   (2)   Mrs. Christina May Tennent, the widow, and John H. Tennent, the only child of John H. Tennent, Jr., were rightfully awarded the fund in controversy.   Keener v. Grand Lodge, 38 Mo. App. 543; Pleimann v. Hartung, 84 Mo. App. 283; Grand Lodge v. Riebling, 81 Mo. App. 545.

*Johnson & Richards* and *John H. Holliday* for appellant.

(1)   The interest of the beneficiary named in the fraternal benefit certificate becomes vested at the death

of the insured and the qualifications of the beneficiary are to be determined according to the facts and the law applicable to the case as both exist at that date. Hofman v. Grand Lodge, 73 Mo. App. 54; Supreme Council v. Heidlet, 81 Mo. App. 603; Ferbrache v. Grand Lodge, 81 Mo. App. 272; Benefit Association v. Bunch, 109 Mo. 580; Police Ass'n v. Tierney, 116 Mo. App. 470. (2) The evidence showed that appellant, Louisa H. Tennent, was a member of deceased's family at the time of the issuance of the last benefit certificate and at the time of his death. Grand Lodge v. McKinstry, 67 Mo. App. 89; Manley v. Manley, 107 Tenn. 191. (3) The evidence showed that appellant, Louisa H. Tennent, was dependent upon deceased at the time of the issuance of the last benefit certificate and at the time of his death. Grand Lodge v. Elsner, 26 Mo. App. 108; Keener v. Grand Lodge, 38 Mo. App. 543; Ballou v. Gile, 50 Wis. 614; Carmichael v. Mut. Ben. Assn., 51 Mich. 494; Hosmer v. Welch, 107 Mich. 470; Martin v. Modern Woodmen, 111 Ill. App. 99. (4) The court found that the Western Commercial Travelers' Association was a fraternal benefit association, as defined by the laws of Missouri, and that the act of 1897 was controlling upon the court. Therefore, appellant, being a blood relative of deceased, was a qualified beneficiary. Laws of Missouri, 1897, p. 132, secs. 1, 15, 15a, 16; R. S. 1899, sec. 1408; R. S. 1889, secs. 2821-2823; Laws of Missouri, 1879, p. 65; Supreme Council L. of H. v. Neidlet, 81 Mo. App. 508; Martinez v. Probst, 81 Mo. App. 597; Keener v. Grand Lodge, 38 Mo. App. 549; Grand Lodge v. McKinstry, 67 Mo. App. 86; Dennis v. Modern Brotherhood, 119 Mo. App. 214; Wallace v. Maden, 168 Ill. 356; 1 Bacon on Benefit Insurance (3 Ed.), sec. 244. (5) If the Western Commercial Travelers' Association was not a fraternal beneficial association, then it was bound by its contract of insurance, as evidenced by its certificate, and must pay Louisa H. Tennent, and neither the plain-

tiff association nor defendants, Christina May Tennent and John H. Tennent, a minor, can raise the defense of *ultra vires.* Young v. Railway Mail Ass'n, 126 Mo. App. 325, 103 S. W. 558; Baltzell v. Modern Woodmen, 98 Mo. App. 161; Toomey v. Supreme Lodge, 147 Mo. 138; McDonald v. Life Association, 154 Mo. 627-8; Hysinger v. Supreme Lodge, 42 Mo. App. 635; Hoffmeyer v. Muench, 59 Mo. App. 22; York v. Farmers' Bank, 105 Mo. App. 140.

BLAND, P. J.—The Western Commercial Travelers' Association is an insurance corporation. Section 1, article 2, of its charter is as follows:

"The objects of this association are: (1) to obtain as its active and honorary members a large number of white male persons, (a) of good moral character, (b) of good health, (c) who are not under twenty-one nor over forty-five years of age, (d) who are traveling salesmen, (e) salesmen (or clerks in wholesale or manufacturing houses) or (f) buyers or salesmen for proprietors, copartners or corporations engaged in a legitimate mercantile manufacturing or commercial business, and who are proprietors, copartners, officers, directors or stockholders of corporations engaged in such business; (2) adopt, maintain and execute such plans as shall tend to the mutual benefit and protection of its members; (3) levy and collect assessments from its active members for such sums as may be necessary to provide a death loss fund for the sole purpose of the relief and aid of families, widows and orphans and other dependents of its deceased members, and (4) levy and collect from its members such sums as may be provided in its constitution and by-laws for the payment of its necessary expenses and the promotion of its objects."

On May 5, 1894. John H. Tennent, Jr., became a member of the association and it issued to him a mem-

bership certificate or policy of insurance for $4,000, payable at his death to his mother, Louisa H. Tennent. On February 8, 1896, Tennent surrendered the original certificate and took a new one, in which his wife, Christina May Tennent, was designated as beneficiary. On May 15, 1906, Tennent again changed the beneficiary and a new certificate was issued to him in which Louisa H. Tenbent, his mother, was designated as beneficiary. On May 28, 1906, Tennent died. After proofs of loss were furnished the association, Louisa H. Tennent and Christina May Tennent and John H. Tennent, a minor son of the deceased and Christina May Tennent, laid claim to the benefit fund, whereupon the association filed its bill of interpleader in the St. Louis Circuit Court, paid the fund into court and asked that the claimants be required to interplead therefor. They were ordered to interplead, a guardian *ad litem* was appointed for John H. Tennent, Jr., and each of the claimants filed a separate interplea. Issues were raised on these interpleas by answers filed thereto. These issues were submitted to the court, who after hearing the evidence, on the written request of Louisa H. Tennent, made a finding of the facts and rendered judgment in favor of Christina May Tennent and John H. Tennent, Jr., awarding to each one-half the fund, less certain costs which had been allowed by the court to the Association. Both Louisa H. Tennent and John H. Tennent, Jr., appealed from this judgment.

The contention of Louisa H. Tennent is that the Association is a fraternal beneficiary society and that she, being a blood relative of the deceased member, is competent to take the fund as beneficiary, under the provisions of section 1408, Revised Statutes 1899. She also contends that she is entitled to the fund by reason of the fact that she was a member of the family of the deceased member and a dependent upon him. The other

128 App.—35

interpleaders contend that the association is not a fraternal beneficiary society, that Louisa H. Tennent was not a dependent upon the insured, was not a member of his family, and is not entitled to the fund by reason of being a blood relative of the deceased member, for the reason that blood relatives are not named as beneficiaries in the charter of the association. A fraternal beneficiary association, as defined by the statute (section 1408, R. S. 1899), is a "corporation, society or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and . . . : shall have a lodge system, with ritualistic form of work and a representative form of government," etc. The association does not fill the measure of this definition, for the reason it has no lodge system, with ritualistic form of work, nor has it a representative form of government.

In Westerman v. Supreme Lodge K. of P., 196 Mo. l. c. 701, the court said: "It is only essential to constitute the defendant a fraternal beneficiary association that it be organized for the benefit of its members, and not for gain or profit. It must have a representative form of government and ritulistic form of work." [See also Baltzell v. Modern Woodmen, 98 Mo. App. 153.]

The association was incorporated July 15, 1888, under the then laws of this State, relating to benevolent associations and has not since amended its charter, or otherwise taken advantage of section 1409, Revised Statutes 1899, to bring itself under the Act of 1897; nor has it made reports to the State superintendent of insurance, under the provisions of section 1411, Revised Statutes 1899, nor do we think it is brought under the provisions of said act by the amendment of 1901, of section 1423, Revised Statutes 1899, which originally read as follows:

"This act shall not apply to or affect grand or subordinate lodges of Masons, Odd Fellows or similar or-

ders paying only sick, disability or funeral benefits, or any association not working on the lodge system which limits its certificate holders or membership to a particular class, or to the employees of a particular town or city, designated firm, business house or corporation."

The amendment of 1901 added the following to the above section:

"Provided that associations of commercial travelers and those employing commercial travelers incorporated as fraternal benefit associations or societies shall in all respects be subject to the provisions of this act."

The purpose of the amendment was not to legislate this class of associations, who have no lodge system, with ritualistic form of work and representative form of government, bodily into fraternal beneficiary associations but was to take them out of the class of fraternal benefit associations whose membership is composed of persons following a particular avocation and segregate them from that class of benefit associations whose membership is confined to members of a designated secret order, so as to enable benefit associations composed of commercial travelers to avail themselves of the benefits of the act, by providing for a lodge system, with ritualistic form of work and a representative form of government, and by making annual reports to the state superintendent of the insurance department. The evidence is that the association has no lodge system nor a representative form of government and has never made a report to the state superintendent of insurance, hence it cannot be classed as a fraternal beneficiary association, under the Act of 1897.    But the failure of the association to comply with the Laws of 1897, does not *ipso facto* forfeit its charter nor convert it into an old line insurance company.    [Kern v. Legion of Honor, 167 Mo. 471, 67 S. W. 252; Baltzell v. Modern Woodmen, supra.]    It is a mutual benefit association, doing business on the assessment plan and

is confined in the issuance of certificates of insurance to the class of beneficiaries named in its charter. [McDonald v. Life Assn., 154 Mo. 618, 55 S. W. 999; Grand Lodge v. McKinstry, 67 Mo. App. 86; Dennis v. Modern Brotherhood of America, 119 Mo. App. 214, 95 S. W. 967.] The act under which the association was incorporated (Laws of 1879, p. 65), restricted the beneficiaries of such societies to the families, widows, orphans or other dependents of members. This provision was copied into the charter of the association (article 2, sec. 1), hence to entitle Louisa H. Tennent to the fund, she must come within one of these classes, and she comes within the classes named, if she was a member of John H. Tennent's, Jr., family, or was dependent upon him. In respect to the relations which existed about the time Louisa H. Tennent was designated as beneficiary and until his death, between John H. Tennent, Jr., and his mother and wife, the learned trial judge made the following finding of facts:

"That said Christina May Tennent and John H. Tennent, Jr., lived together as man and wife continuously, and in the same dwelling house until February, 1906. That some time in February, 1906, John H. Tennent, Jr., left his then residence in the city of St. Louis, on a business trip, intending to return to his said home. That at said time and up to the date of his death his occupation was that of a traveling salesman. That from and after the time of leaving his home until the day of his death he contributed nothing to the support of his wife and child, and at the time of leaving, left them in destitute circumstances. That his wife and child continued to live in the house in which they had lived with him from the date of his departure in February, 1906, until some time in March, 1906, at which time she removed to the residence, in the city of St. Louis, of her brother, and from that day until after the death of her husband she continued to reside in the

city of St. Louis, dependent upon the bounty of her
said brother.    That said John H. Tennent, Jr., never
at any time called at the house at which he had lived
with his wife and child; that he never after the date of
his leaving in February, saw his wife or was seen by
her.

"That the said Christina May Tennent some time in
March expressed her unwillingness to further live with
the said John H. Tennent, Jr., under the then exist-
ing conditions.    That at that time the said Christina
May Tennent was and she is now, without means of sup-
port except as she enjoys the bounty of her relatives
—her brother.    That between the date of his leaving
his home in February and the date of his death John
H. Tennent, Jr., requested his wife by letter to live with
him in Texas, but that he did not at any time send her
any money or provide the means of transportation. That
during the months of March, April and May said John
H. Tennent have or sent to his said mother, Louisa H.
Tennent, sums of money aggregating over two hundred
dollars ($200) for her support.    That the husband of
Louisa H. Tennent is living, of the age of sixty-seven
(67) years, and is able-bodied, his age considered, and
that between February, 1906, and the date of the death
of John H. Tennent, Jr., the said husband of Louisa H.
Tennent was without employment or occupation and
without means.    That during the period between the
time when John H. Tennent, Jr., left his wife and child,
and the date of his death the said Louisa H. Tennent,
his mother, to whom he made the gift amounting to two
hundred dollars ($200) was possessed of at least  one
thousand dollars ($1000) in her own right.    That
during said period said Louisa H. Tennent was living
with her husband, maintaining the residence and had
living in her house one boarder who was paying monthly
sum in compensation for her board and lodging.

"That the said John H. Tennent, had during the

period between the date of his leaving his wife and child, and the date of his death, no fixed place of abode. That he visited his said mother at her residence on Washington avenue in the city of St. Louis, during the month of March, 1906, but did not remain over night. That again in the early part of May, 1906, he went home to his mother and father and remained there for about five days. That during that visit he purchased meat, vegetables and groceries necessary for the household of his mother and father. That again on May 27, 1906, he went to the house of his mother and father in Webster Groves, Missouri, and that he died on May 28, 1906. . . .

Section 4, of article 8, of the constitution of said association provides:

" 'Should all of the beneficiaries designated in any certificate issued by it die, the benefit shall be paid to the heirs of the deceased member in accordance with the laws of the State of Missouri. Should a member die without leaving designated beneficiaries or heirs at law who apply for the benefits within one year from the date of his death, then his benefit shall revert to and become a part of the death loss fund of the association.' "

Upon these facts, the learned trial judge made the following findings of law:

"The court finds that as a matter of law the mother of the deceased, John H. Tennent, Jr., was not at any time mentioned in the evidence, a member of his family within the meaning of that word as used in the charter, constitution and by-laws of the Western Commercial Travelers' Association or the law governing this case. That the said Louisa H. Tennent was not at any time mentioned in the evidence dependent upon said John H. Tennent, Jr. That the said Louisa H. Tennent was not at any time a dependent within the meaning of the provisions of the charter and constitution of

the Western Commercial Travelers' Association or the laws governing this cause. . . .

"That the designation of Louisa H. Tennent as a beneficiary of John H. Tennent, Jr., was void. That Louisa H. Tennent does not fall within the designation of the words 'family' or 'member of deceased's family' as used in the laws of this State and the charter of the Western Commercial Travelers' Association.

"That the certificate issued to Christina May Tennent having been surrendered, and said John H. Tennent, Jr., having attempted to designate some other person, the court declares as a matter of law that he died without having designated any person qualified under the provisions of the charter, constitution and by-laws of the Western Commercial Travelers' Association, and that therefore the fund now in court, less the costs and expenses to be properly deducted therefrom by orders of this court, should be paid in equal shares, one-half to Christina May Tennent, one-half to John B. Denvir, Jr., as guardian *ad litem*, for said John H. Tennent, a minor."

The facts as found are in accord with the undisputed evidence. It should be added that the uncontradicted evidence shows that John H. Tennent, Sr., the husband of Louisa H. Tennent, and the father of John H. Tennent, Jr., at all times mentioned in the evidence was living with his wife, and had a home where they dwelt together as one family, and there is nothing in the evidence to show that the husband was not in fact, as well as in law, the head of the family. It appears from the evidence that John H. Tennent, Sr., failed in business about the beginning of the year 1906, and was stripped of all his means and was out of employment until some time in September, 1906; but the evidence nowhere shows or tends to show that he abandoned all effort to support his family or that he shifted the burden of their support upon the shoulders of his

son, John H. Tennent, Jr., nor does it show that from advanced age or physical weakness, he was unable to support his family. John H. Tennent, Jr., had a family of his own and though his wife was living separate and apart from him, their married relations were not dissolved, hence he continued to be the head of the family. [Brown v. Brown's Admr., 68 Mo. 388; Whitehead v. Tapp, 69 Mo. 415.] Louisa H. Tennent was living with her husband as a member of his family. Neither she or her son could, at the same time, be members of two separate and distinct families, and we find that she was not a member of the family of John H. Tennent, Jr. Was she dependent upon him within the meaning of the charter of the corporation? In Keener v. Grand Lodge, A. O. U. W., 38 Mo. App., in defining the word "dependent," as used in a benefit certificate, the court, at page 550, said: "I would not restrict dependents to those whom one may be legally bound to support, nor, yet, to those to whom he may be morally bound, but the term should be restricted to those whom it is not unlawful for him to support." This language was used in a contest wherein the wife of the deceased member and another woman, with whom he had lived for a number of years as his wife, and who was ignorant that he was married to another woman, were contestants for the fund.

In Nye v. Grand Lodge, etc., 9 Ind. App. l. c. 150, the court said: "Those who may be dependent upon another for support and maintenance may not be of the family or related by blood to the member. It is a question of fact, and not of law, to determine who are members of a family, or of blood relationship, or dependents. [American Legion of Honor v. Perry, 140 Mass. 590.]"

In Alexander v. Parker, 144 Ill. 355, it was ruled: "A dependent, as the term is used in reference to these benefit societies, is one who is sustained by another.

The maintenance of dependents is such support as consists in the furnishing of 'food, clothing, lodging or education.' Maintenance in the matter of clothing does not refer to occasional gifts of clothing, but to such a regular supply of clothing as may be reasonably necessary to make the body comfortable."

The State of Florida has a statute granting the right of action for death by wrongful act or negligence, and confers the right of action upon designated persons. Third in the list are persons who are dependent for support upon the person killed. In Duval v. Hunt, 34 Fla. 85, the court held: "When the suit is brought, in such cases, by a person who bases his right to recover upon the fact that he is a dependent upon the deceased for support, then he must show, regardless of any ties of relationship, or strict legal right to such support, that he or she was, either from the disability of age, or non-age, physical or mental incapacity, coupled with the lack of property means, dependent in fact upon the deceased for a support. When adults claim such dependence, there must be, because of some of the disabilities above mentioned, an actual inability to support themselves and an actual dependence upon some one for support, coupled with a reasonable expectation of support, or with some reasonable claim to support from the deceased."

Bacon in his excellent work on Benefit Societies and Life Insurance, after reviewing the decided cases, says: "From the definition and cases cited it seems that whether or not a person is included among the dependents of a member of a benefit society is a question of fact, and that each case must be decided on its own merits." [1 Bacon on Benefit Societies & Life Insurance, sec. 261, p. 628.]

The contributions or donations, made by John H. Tennent, Jr., to his mother and her family, began with thirty dollars in the latter part of March, 1906, followed

by twenty-five dollars on April sixteenth, forty-three dollars and eighty-five cents on May eighth, and closed with one hundred dollars on May twenty-third. The latter sum, his mother testified, went to pay his funeral expenses. There is no proof that John H. Tennent, Jr., ever contributed one cent to the support of his mother or her family, prior to March, 1906. His sudden liberality toward his mother and family may be accounted for on two grounds; first, on account of the fact that his father had recently lost his fortune and was out of employment, causing a temporary stringency in the financial affairs of the family; and, second, on account of the strained relations between himself and wife at the time the donations were made, which strained relations were caused by his neglect and refusal to support his wife and child. We do not think this evidence proves, or tends to prove, that Louisa H. Tennent was a dependent upon her son within the meaning of the charter of the association, and hence she is not in any class for the benefit of whom the association is authorized to issue a beneficiary certificate, and is not entitled to the fund. The beneficiary named in the certificate not being legally entitled to take the fund, under section 4, article 8, of the constitution of the association, it is payable to the heirs of the deceased member, to-wit, his wife and son. This is also true under our statute of distributions. [Pleimann v. Hartung, 84 Mo. App. 283; Grand Lodge v. Riebling, 81 Mo. App. 545; Keener v. Grand Lodge, A. O. U. W., supra.]

Louisa H. Tennent was asked to repeat conversations she had with her son before his death, in regard to her future support. On objections she was not permitted to repeat these conversations. This ruling is assigned as error. If she was a competent witness to repeat these conversations (which we do not concede) her counsel neglected to get in the record what she

would have testified, had she been permitted to repeat the conversations, so this court cannot see whether the excluded evidence was material or relevant to the issues in the case, or determine whether the complaining party was prejudiced by its exclusion.     [Ruschenburg v. Railroad, 161 Mo. 70, 61 S. W. 626.]

No reversible error appearing, the judgment is affirmed.    All concur.