# CHARLES H. THOMPSON, Respondent, v. ROYAL NEIGHBORS OF AMERICA, Appellant.

**St. Louis Court of Appeals. Submitted on Briefs December 6, 1910. Opinion Filed December 30, 1910.**

1. **APPELLATE PRACTICE: No Declarations of Law Given: Presumption of Correctness of Trial Court's Finding.** In the absence of declarations of law, the appellate court is without any guide as to the theory upon which the trial judge acted in arriving at his conclusions, and in such a case it will be presumed that he applied correct principles of law to the testimony and that he reached his conclusions as much from the absence of testimony necessary to the defense of appellant as from the testimony before him.

2. **LIFE INSURANCE: Fraternal Beneficiary Associations: Misrepresentations: Statute Applies, When.** In an action on a death certificate, there being no proof that defendant was a fraternal beneficiary association, within section 7109, Revised Statutes 1909, it could not defend for misrepresentations by insured as to facts which did not contribute to his death, since, in the absence of such proof, defendant will be presumed to be governed by section 6937, Revised Statutes 1909, which provides that no misrepresentation made in obtaining an insurance policy shall avoid it unless the matter misrepresented actually contributed to the event on which the policy became payable.

3. **FRATERNAL BENEFICIARY ASSOCIATIONS: Evidence: Character of Company: Recital in Certificate.** A recital in the certificate that insurer is a benevolent association is not evidence of that fact.

4. **———: Character of Company: Method of Determining: Statute.** The question whether an insurance company is a fraternal beneficiary association, within section 7109, Revised Statutes 1909, is to be determined in part from the certificate of incorporation or of authority to do business in this state and in part from facts showing its business is conducted in the manner prescribed by said statute, and if the company does not have a lodge system or ritualistic form of work and a representative form of government and does not pay benefits entirely from assessments, it is not a fraternal beneficiary association, within said statute.

5. **APPELLATE PRACTICE: Record Proper: Bill of Exceptions: Stipulation Not Incorporated in Bill.** Papers filed in a cause,

other than the petition, answer, reply and demurrer, become a part of the record only by being copied into the bill of exceptions, and the clerk has no right to copy them unless they are called for therein, and hence a stipulation filed in the court below, but which was not called for nor incorporated in the bill of exceptions, cannot be considered on appeal, although the clerk of the lower court certifies it to the appellate court as a paper filed in the cause.

6. FRATERNAL BENEFICIARY ASSOCIATIONS: Subject to General Life Insurance Laws, When. A mutual benefit association doing business on the assessment plan, which is not within the provisions of section 7109, Revised Statutes 1909 is subject to the laws relating to life insurance companies.

7. LIFE INSURANCE: Cause of Death. Where, though insured's confinement at childbirth was followed by puerperal septicaemia, she had begun to recover from that ailment, when pneumonia developed, causing her death, it cannot be said that her pregnancy and confinement contributed to her death.

8. ———: Misrepresentation as Defense: Depositing Premiums Paid: Certified Check: Statute. Under section 6940, Revised Statutes 1909, providing that no defense based upon misrepresentations in securing a life insurance policy shall be valid unless defendant at or before the trial deposits in court for the benefit of plaintiff the premiums received on such policy, the amount of all the premiums received by the insurer must be deposited in legal tender, and a deposit by check, certified or otherwise, is not sufficient, in the absence of a waiver of this requirement by defendant.

9. ———: ———: ———: Pleading and Proof. An insurance company, defending an action on a life policy on the ground of misrepresentations in procuring the policy, must prove, as well as plead, that it has deposited in court in legal tender all of the premiums paid by insured, as required by section 6940, Revised Statutes 1909.

0. ———: ———: Sufficiency of Evidence. In an action on a life insurance policy, evidence *held* to sustain a finding that insured was not pregnant when the application for the policy was made.

11. ———: ———: Estoppel: Receiving Premiums from Insured. In an action on a life insurance policy, it is *held* that evidence that defendant had made assessments and received payments thereon from insured, after the fact of her pregnancy was manifest and after she had been confined, was proof tending to establish that defendant was estopped to defend on the ground of misrepresentation by insured as to non-pregnancy.

12. **TRIAL PRACTICE: Trial by Court: Credibility of Witnesses: Appellate Practice: Conclusiveness of Finding.** A trial judge, in a trial by the court, is no more bound than is a jury to lend credence to opinion or any other testimony; and where the evidence is conflicting, so that the trial judge could find either way, his conclusion is not open to review by the appellate court.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*E. A. Enright* and *Creech & Penn* for appellant.

(1)   Fraternal beneficiary societies are exempt from the provisions of the life insurance laws of this state by statute, and therefore the warranty of the contract maintains.   Chap. 12, art. 2, sec. 1408, R. S. 1899.   (2)   The contract here sued on is a contract between the member and the society, and includes the application, the benefit certificate, and the constitution and the by-laws of the defendant.   3 Am. and Eng. Ency. Law (2 Ed.), p. 108.   (3) The answers in the application for the benefit certificate herein sued on are warranties.   Beard v. Royal Neighbors of America, 99 Pac. 83; Hoover v. Royal Neighbors of America, 70 Pac. 595; Simon v. Royal Neighbors of America, 135 Ill. App. 599.   (4)  Warranty is in the nature of a condition precedent to the validity of the certificate, and must be literally true, and if the fact warranted true is not true, then it follows, as a matter of course, that the breach of the warranty avoids the certificate.   This is fundamental, and scarcely needs the citation of authorities.   3 Cooley's Briefs on the Laws of Insurance, p. 1950; Aloe v. Mutual R. F. L. Assn., 147 Mo. 561.   (5)   The evidence does not disclose facts otherwise than that the pregnancy contributed to the death of Kate W. Thompson.   However, this may be, the general principle that the materiality of the fact is not

essential in the case of warranty governs in this case, and the said certificate is void though the statement on which we base the breach of warranty is predicated on a physical condition which did not produce the death of Kate W. Thompson. McDermott v. Modern Woodmen of America, 97 Mo. App. 636; Aloe v. Mutual R. F. L. Assn., above. (6) Not only is it of no consequence whether the fact warranted be material to the risk or not, under the decisions of the courts of Missouri, but the breach of warranty is fatal to the certificate although the insured had no knowledge of the falsity constituting the breach of warranty, and although the insured did not intend to deceive, that is, whether the false statement was fraudulently or innocently made. The warranty must be literally true, and to avoid the certificate the evidence needs but to show the warranty to be untrue. Richards on Insurance, sec. 53; McDermott v. M. W. A., 97 Mo. App. 646; Whitmore v. Sup. Lodge, 100 Mo. 47; M. W. of A. v. Angle, 127 Mo. App. 94; 3 Cooley's Briefs on Law of Insurance, p. 1954 (d); Swich v. Home Ins. Co., 23 Fed. Cas. 550; Peterson v. Des Moines Life Assn., 115 Iowa 668; M. W. A. v. Von Wald, 6 Kans. App. 231; S. C. K. of D. v. Wood, 120 Ga. 328; Life Ins. Co. v. Johnston, 80 Ala. 467; Morgan v. Life Ben. Assn., 32 Ill. App. 79; Life Ins. Co. v. Cameron, 48 Ind. 264; Kemp v. G. T. M. B. A., 64 Hun. 637, 135 N. Y. 658; Elliott v. M. B. L. A., 76 Hun. 378; Davis v. Supreme Lodge H. of H., 35 App. Div. 354; Home Mutual Life Assn. v. Gillespie, 110 Pa. 84; Baumgart v. M. W. A., 85 Wis. 546; McGowan v. Supreme Court I. O. F., 104 Wis. 173; National Fraternity v. Karnes, 24 Tex. Civ. App. 607; Leonard v. State M. L. A. Co., 24 R. I. 7. (7) The warranties of Mrs. Thompson go further than that her answers to the medical examiners were true, but that the answers as written by the medical examiner were true and were the answers made by

her to the medical examiner, and her beneficiary will not now be heard to say that the answers were those of the medical examiner and not of the assured. Sup. Lodge K. & L. of H. v. Payne, 110 S. W. 523; M. W. of A. v. Angle, 127 Mo. App. 94. (8) At the time Mrs. Thompson accepted the benefit certificate, she signed the policy and thereby re-affirmed the truth of the warranties made in her application. M. W. of A. v. Angle, 127 Mo. App. 94; Sup. Lodge K. & L. of H. v. Payne, 110 S. W. 523. (9) Inasmuch as Mrs. Thompson signed the application, which application was attached to and made a part of the certificate of insurance, and afterward signed, accepted, and retained the certificate, with the copy of the application attached thereto, she was charged with notice of the untrue answers in the application and her beneficiary is estopped to deny the same. M. W. of A. v. Angle, 127 Mo. App. 94. (10) Even though the medical examiner may have written such answers as he deemed material, without assured's knowledge, and assured has signed the same without reading it, yet the insurer will be estopped from asserting the falsity of only such answers contained in the application, as were with the knowledge of the medical examiner. M. W. of A. v. Angle, 127 Mo. 94. (11) The warranties made by the applicant in her application were continuing warranties, and must have been true at the time of the completion of the contract, that is, at the delivery of the certificate, or if the condition of pregnancy developed between June 11, 1906, the date of the application, and August 2, the date of delivery of certificate, under the contract and the law, it would operate the same as though the pregnancy took place prior to June 11, 1906. 1 Bacon on Benefit Societies (2 Ed.), sec. 274; Thompson v. Travelers' Ins. Co., 91 N. W. 75; Insurance Co. v. Wolff, 95 U. S. 326; Cable v. U. S. L. Ins. Co. (C. C. A.), 111 Fed. 19; Ins. Co. v. Ewing, 92 U. S. 377.

154 App.—8

*Wm. A. Dudley, R. H. Norton* and *O. H. Avery* for respondent.

(1)   Assuming that there was a misrepresentation in the application, it was neither pleaded or proven that the pregnancy of the insured caused her death, or that defendant was so constituted that the general insurance laws did not apply to it.   R. S. 1899, secs. 7890, 7891, 1408, 1409 and 1410; Gruwell v. Knights and Ladies of Security, 126 Mo. App. 496; Schmidt v. Order of Foresters, 124 Mo. App. 165; Brassfield v. Modern Woodmen, 88 Mo. App. 210; Westerman v. Sup. Lodge K. P., 196 Mo. 701; Jenkins v. Ins. Co., 171 Mo. 375; Western Com. T. A. v. Tennett, 128 Mo. App. 541; Keller v Ins. Co., 198 Mo. 440.   Warranties stand upon the same footing as representations in view of this statute. Kern v. Legion of Honor, 167 Mo. 471; Lavin v. Ins. Co., 101 Mo. App. 434. (2) Even a fraternal beneficiary society will be held to have waived a forfeiture for breach of warranty of a statement in the application where the misstatement was induced by the suggestion of defendant's medical examiner. Shotlif v. Modern Woodmen, 100 Mo. App. 138; Herndon v. Triple Alliance, 45 Mo. App. 432; 29 Cyc., page 189, par. 4, note 66 to 70; 25 Cyc., page 803.

REYNOLDS, P. J.—Plaintiff, respondent here, filed his petition in the circuit court of Lincoln county, in which it is set out that defendant is a life insurance company, incorporated under the laws of the State of Illinois and engaged in the business of life insurance in the State of Missouri, by virtue and authority of the laws thereof; that plaintiff was the husband of one Kate W. Thompson, hereinafter referred to as the insured, and remained such until her death; that she became a member of the order and received a certificate by which   defendant   company   contracted   and

agreed to pay to plaintiff, her husband, the sum of one thousand dollars on her death, she then being a member in good standing of the defendant association and having paid all assessments and amounts of money levied against her as a member thereof; that on the death of the insured due notice and proof of her death was submitted to defendant and demand of payment of the sum of one thousand dollars made, which being refused and never having been paid, judgment is asked for that amount, with interest and costs.

The answer denies each and every allegation and averment of the petition, save as expressly admitted, qualified or explained. It then "admits" that defendant is a corporation, duly organized and existing as a fraternal beneficiary society under the laws of the State of Illinois and authorized to transact business as such fraternal, beneficiary society in Missouri under the laws thereof relating to such societies. (Note that there was no such averment in the petition.) It then admits that on the application made by the member to a camp of the order located at Elsberry, Missouri, "the same being a subordinate lodge of the defendant society," it issued its benefit certificate payable to plaintiff on the death of his wife. Further answering it sets up the law of the State of Illinois under which it avers it was organized as a fraternal beneficiary society and avers that it is such and is carried on for the sole benefit of its members and their beneficiaries and not for profit; that it has a lodge system with a ritualistic form of work and a representative form of government and makes a provision for the payment of benefits in case of the death of its members and that the fund with which losses are paid is derived from assessments and dues collected from its members. The answer further avers that the certificate was issued on the faith of the truthfulness of the answers of the insured to the questions in the application and

that her answers were warranties. That among the questions asked her, the insured was asked if she was now pregnant. That in a note printed on the bottom of the same page of the application on which this question is printed, it is set out that "if applicant is pregnant application will not be accepted by supreme physicians. Examination will be postponed until at least two months after confinement." That by answering "No," to this question as to whether she was then pregnant, the insured had, by the provisions in her application and set out in the certificate, warranted this answer to be true. The answer avers that this answer "No," to this question, was false and untrue, and that in truth and in fact the applicant was at that time pregnant and her answer constituted a breach of warranty and a fraud upon defendant, and that by the false statement, defendant was deceived and misled to its damage and that but for the same the application would not have been considered and no benefit certificate would have been issued to Mrs. Thompson; that the warranty of non-pregnancy was a continuing warranty, and that by the terms of the contract sued on, and by reason of the breach of the warranty above set out and the false and fraudulent representations as to non-pregnancy and the fraud thereon committed against defendant society, the benefit certificate sued on has been and is null and void and of no force and at no time has it been a valid obligation against defendant society, and that all payments made to defendant society of every nature and sort by the assured are forfeited. That since the discovery of the breach of the warranty and perpetration of the fraud, it has been ready and willing to pay to the assured or her personal representative, all sums of money paid by her to the defendant society, and it avers that it now brings into court the sum of $9.40, the amount paid by Kate W. Thompson to defendant society and tenders that sum to plaintiff, and for the

purpose of continuing the tender of said sum, it deposits with the clerk of the court a certified check for the same, to be delivered to plaintiff for the purposes herein set out; wherefore defendant prays judgment.

The reply denies each and every allegation of new matter contained in the answer; sets up that the medical examination was taken and made by a regularly authorized and appointed local agent and camp physician of defendant, he having full authority to make and pass upon the medical examination and to do all things necessary to be done in and about the taking and making of the examination and the writing out of the questions and answers therein contained; that he conducted the examination of the assured, wrote out all the questions and answers, including those pertaining to the pregnancy of the assured; that the assured disclosed to him everything that he asked her concerning her condition and gave him all the information that she had as to that condition, and that after she had so informed this physician or medical examiner as to her condition, and he asked her if she was then pregnant, but had written in the answer, "No," to the question, as his conclusion based on her answers to other questions. It is further claimed that on the faith of the issue to her of the certificate, the insured had paid large sums of money by way of premiums, dues and assessments under the provisions of the policy; that after its issue and acceptance thereof as aforesaid by the insured, she became pregnant and gave birth to a child, "and yet the defendant, with full knowledge of said fact, continued to demand assessments, dues and premiums from the said Kate W. Thompson, and said Kate W. Thompson did continue to pay the same up to the time of her death, as in the petition stated." That after her death defendant furnished plaintiff with blanks for the proof of the death of his wife and required plaintiff to go to great expense, labor and loss

of time in and about the taking of affidavits and proof of death, "so that plaintiff says that the defendant ought not now to be allowed to maintain that the policy sued on is invalid by reason of anything stated in its answer, but should be estopped now to assert that said policy is invalid or void by reason of the pretended breach of the warranty of the answer pleaded."

The case was tried by the court, a jury being waived, and evidence tending to support the allegations of the petition was introduced, the policy or certificate itself being introduced in evidence by plaintiff and also due proofs of death of the insured, and some correspondence between plaintiff and officers of the defendant. The receipts for payments of assessments made after the confinement of the insured were also in evidence.

At the conclusion of plaintiff's evidence, defendant interposed a demurrer to the evidence which was overruled, defendant excepting. Thereupon defendant introduced evidence tending to show that the insured was pregnant at the time the application stated to the contrary and tending to show that the examining surgeon had written in the answer, "No," by direction of the insured. The by-laws of defendant were introduced in evidence but only such of them as appellant deems material are in the abstract. At the conclusion of the testimony, defendant again demurred to the evidence, which demurrer was overruled, defendant excepting. No declarations of law other than this demurrer were asked by either party and none were given. The trial court found for plaintiff and entered up judgment for the amount of the policy and interest. Defendant in due time filed its motion for a new trial and that being overruled duly excepted, duly filing its bill of exceptions and perfecting its appeal to this court.

We have read over not only the abstract furnished by defendant, appellant here, but also the full transcript of the record which includes the bill of exceptions, at the suggestion of the learned counsel for the appellant, that in sending up the full transcript the clerk had omitted from it a certain stipulation filed in the case, to the effect that the defendant society is a corporation duly organized and existing as a fraternal beneficiary society under and by virtue of the laws of the State of Illinois and that at the time it issued the certificate to the wife of plaintiff, was duly authorized and licensed to transact business in the State of Missouri as a fraternal beneficiary society under the laws of Missouri, and that a printed copy of the by-laws of the defendant, revised in 1905, duly certified by the supreme recorder of the order, to be a full, complete and accurate copy of the original by-laws of the defendant, "shall be admitted in evidence without objection except as to relevancy and materiality of matters contained in the by-laws," and that the transcript also omitted to set out any copy of a certain check deposited with the clerk of the circuit court by defendant which the clerk had failed to mark as filed and had not copied into the transcript. This check, with its endorsements, is as follows:

"No.——.          DUBUQUE, IOWA, Sept. 19, 1907.
          The First National Bank.

Pay to Charles H. Thompson for the use and benefit of the personal representative of Kate W. Thompson, deceased, or order $9.40, nine and 40-100 dollars.
          In Current Funds.
                    JOHN D. DENISON, JR."

Endorsements: "Certified, Sept. 19, 1907, First National Bank, Dubuque, Iowa.   B. F. Blocklinger, Cashier."

No filing mark appears on it. On suggestion of diminution of record, we ordered certiorari to issue to the clerk to send up the documents referred to. They are before us under the clerk's certificate that they are true copies of the stipulation of counsel filed in his office and also a true copy of a certain check delivered to the circuit clerk "at the time of the filing of the answer in the cause." The writ of certiorari was applied for by counsel for appellant because in the brief originally filed by counsel for respondent, the abstract was attacked for lack of these as well as other matters, these other matters said to be lacking, however, having been supplied by a supplemental abstract. With all these before us, we are compelled to hold that appellant has not shown error demanding a reversal of the judgment of the trial court. In the absence of declarations of law, we are without any guide as to the theory upon which the learned trial judge acted in arriving at his conclusion, consequently we are to presume that he applied correct principles of law to the testimony which was in the case and that he reached his conclusion in the case as the case was presented to him, as much from the absence of testimony necessary to the defense of the appellant, as from the testimony before him. The learned counsel for appellant urge that this case was tried in the lower court on the theory that this defendant was a benevolent association or organization, as such organizations are known to our law and that that having been agreed to by the stipulation referred to, it cannot now be questioned on this appeal. The trouble with that contention is twofold. First, on an examination of the trial of the case, there is nothing to show that it was conceded that appellant was a benevolent association. The petition averred defendant was an insurance corporation; the answer "admitted" (sic) that it was a benevolent association; the reply put this in issue by a general de-

nial of the answer. The absence of that proof may have been the cause directly leading to the result arrived at by the learned trial judge; in fact, absence of proof of such a very material matter was fatal to the respondent's defense. Second, the stipulation admitting this matter, does not help the appellant out, for the very simple reason that there is not a line in the bill of exceptions showing that that stipulation was introduced at the trial or that it was ever shown to or before the trial court. It is true that the certificate sets up that defendant is a benevolent society, but this recital in the certificate was no evidence of the fact itself. Whether it was within section 7109, Revised Statutes 1909, as a fraternal beneficiary association, "as being a corporation, society or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit," and that it was an association having "a lodge system, with ritualistic form of work and representative form of government," and making "provisions for the payment of benefits in case of death . . . derived from assessments or dues collected from its members," are matters of affirmative proof and not to be assumed as existing solely by a recital in the certificate. Even the certificate of incorporation or that of authority to do business in this state, are not conclusive of the character of the business done. That is to be determined, in part it is true by an examination of the certificate issued, but it also rests on proof of acts outside of even the certificate; proof of facts tending to show that the association is conducted as one which our laws define to be a benevolent association. Defendant made no such proof. Those parts of the by-laws which were introduced in evidence contained no reference whatever to a lodge system or ritualistic form of work, or that benefits to be paid came entirely from assessments, and without these appearing the associa-

tion would not fall under our laws peculiarly applicable to fraternal beneficiary societies. If the stipulation referred to had been in evidence and before the court, proof of these matters would have been obviated by the terms of the stipulation, but the mere fact that such a stipulation was filed, does not entitle it to come before us or place it subject to our examination unless, by some call in the bill of exceptions, it is made a matter of record by being incorporated in the bill of exceptions. True, the clerk of the circuit court has sent it up to us, certified as a paper filed in the cause, but papers filed, save the petition, answer, reply and demurrer, if filed, are only of record when made so by being copied into the bill of exceptions and the clerk has no right to copy them unless they are called for in the bill. This point has been so long settled and by so many decisions of our courts, that it is idle to enumerate or recapitulate the authorities on it; it may be said to be elementary law in our state. [State ex rel. v. Merriam, 159 Mo. 655, 60 S. W. 1112.] It not appearing that this stipulation is called for in the bill of exceptions, we cannot notice it, even admitting that it was filed. In its absence, and in the absence of proofs of the facts to the contrary, we can only deal with this defendant as a life insurance company, or, at most, as a mutual benefit association doing business on the assessment plan. In either case it is subject to the laws relating to life insurance companies. [Wilson v. Benv. Ass'n, 125 Mo. App. 597, 103 S. W. 109; Travelers' Assn. v. Tennent, 128 Mo. App. 547, 106 S. W. 1073.] Among the laws relating to such companies is section 6937, Revised Statutes 1909. There is no pretense either by the averments of the answer or by the testimony in the case that the fact of pregnancy contributed to the death of the insured. Hence the decision of the case falls within the provisions of this section 6937, which is to the effect that no mis-

representation made in obtaining or securing a policy of insurance "shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury." In the case at bar, as appears by the proofs of death submitted, and that is all the evidence as to the cause of death, the proof tended to show that the direct cause of death was pneumonia. While it is stated in these proofs of death by the physician who attended the insured in her last sickness, that the confinement of the insured was followed by puerperal septicaemia, it is also set out that she had begun to recover from that when pneumonia developed and that it was pneumonia that proved fatal. So that it cannot be said that the pregnancy and confinement actually contributed to death. As before remarked, that was not the defense of this appellant, it relying upon and basing its defense on the claim that it, defendant, not being a life insurance company but a fraternal beneficiary society or association, was not subject to this provision of this section 6937, and that by the very terms of the certificate or policy all statements were warranted. The foundation for this defense necessarily would have to rest on proof of facts that would constitute defendant a fraternal beneficiary association. But, as before noted, it totally failed to make any proof of facts which brought it within that class of associations.

Another defect in the defense of the appellant rests in its failure to comply with the requirements of section 6940, Revised Statutes 1909, which provides that no defense based upon misrepresentation in obtain or securing policies, "shall be valid, unless the defendant shall, at or before the trial, deposit in court for the benefit of the plaintiffs the premiums received

on such policies.'' It is true that in the supplemental transcript sent us by the clerk, it appears that when the defendant filed its answer, it deposited with the clerk the check above set out, but, as was the 'case with the stipulation, there is no call whatever in the abstract or bill of exceptions for this check. Nor is there any evidence whatever found in the bill of exceptions, even with this supplemental transcript, of the fact of this check having been deposited with the clerk. So far as the trial court was concerned, he had nothing before him to show that even this check had been deposited with the clerk or was in court among the files of the case. Even if we considered this check as deposited, there is a failure to show compliance with the statute. The statute requires the amount of all premiums received on the policy to be deposited. There is no evidence whatever tending to show that the amount of the premiums received was the amount of this check.

Over and above that, however, the statute does not contemplate the deposit with the clerk of a check, whether certified or not. When the statute refers to a deposit with the clerk of the amount of premiums or assessments received, it refers to a deposit of lawful money, legal tender, and the deposit of a check, certified or otherwise, is not a deposit which the respondent was bound to accept. Of course, if the respondent chose to waive the legal tender and accept the check that would be his own concern, but in the absence of such an act on his part, and there is no pretense of any such action, the deposit of the certified check with the clerk is no compliance with the statute. The answer itself contains no averment of a legal tender; it avers deposit with the clerk of a check. Deposit of the premiums or assessments received, is a necessary prerequisite to recovery. [Lavin v. Empire Life Ins.

Co., 101 Mo. App. 434, 74 S. W. 366.] It must not only be pleaded but proven.

Independent, however, of the question at to whether defendant was subject to the laws relating to life insurance companies and recurring to what we briefly stated at the outset, the trial was before the court, a jury having been waived. The question as to whether at the time of making the application the insured was pregnant, was one of the facts inquired into. While the testimony of the physician produced by defendant and who had attended the insured at her confinement, was positive that pregnancy must have existed at the time of making the application for the insurance, after all, his testimony was founded on a matter of opinion. The testimony of the medical examiner or "camp surgeon" of the defendant, he being called as a witness by plaintiff, was equally as positive to the fact that he determined as a result of his examination of the insured at the time she made her application, that pregnancy was not present at that time. This was opinion testimony also. It was for the learned trial judge to accept one or the other, or even reject both, and determine the matter for himself from all the evidence in the case. He was no more bound than is a jury, to lend credence to opinion or any other testimony. Furthermore, there was proof tending to establish the defense of estoppel, the estoppel arising over the fact that defendant had made assessments and had received payments thereon from the insured not only after the fact of pregnancy was manifest but after the insured had been confined. So that there were facts in the case for the determination of the learned trial judge on which he could find either way and his conclusion upon those facts is not open to review by us. This power of the trial judge, in acting on testimony has been very recently gone into and the authori-

ties collated by Judge CAULFIELD in Pierce Loan Co. v. Killian, Admr. (153 Mo. App. 106).

For these reasons, without attempting to set out the authorities as to the difference between what are called regular old line life insurance companies and fraternal, benevolent associations, in the matter of warranties and representations, for they have been very numerous in this state, we hold that the demurrers interposed by appellant, so far as appears by the record in this case, were properly overruled and that the finding and judgment of the learned trial court are sustained by substantial evidence in the case. So far as plaintiff is concerned, he made out a prima facie case. The learned trial court is further sustained in its finding by the lack of evidence, which, to maintain the defense contended for, appellant was bound to have introduced. The judgment of the circuit court is affirmed. *Nortoni*, and *Caulfield, JJ.*, concur.