GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN, Plaintiff, v. HARRY McKINSTRY, Defendant in Error; EDWARD McKINSTRY AND MATTIE McKINSTRY, Plaintiffs in Error.

### St. Louis Court of Appeals, May 26, 1896.

1. **Mutual Benefit Societies:** RIGHTS OF BENEFICIARIES: EFFECT OF STATUTORY AMENDMENT. A fraternal beneficial corporation of this state issued a benefit certificate to a member before the present Revised Statutes took effect, but he changed the beneficiary under the certificate after those statutes took effect. *Held*, that the rights of the new beneficiary were governed by the present revision.

2. ———: ———: PERSONS INCLUDED IN FAMILY OF MEMBER. The term family, as used in the statutory provision authorizing such a corporation to provide for the relief of families of deceased members, may embrace those whom a member is equitably bound to support. And *held*, that an infant who is delivered to a stranger upon the promise of the latter to adopt him and educate and rear him as a child, and who is thereon taken into the household of the stranger and thus educated and reared, but not formally adopted, is a member of the family of such stranger within the meaning of that statute.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*I. C. Terry, D. D. Fisher, Carr & Carr*, and *Chas. E. Wise* for plaintiffs in error.

*F. H. Bacon* for defendant in error.

BIGGS, J.—The plaintiff is a fraternal beneficial corporation, its object being, as stated in its articles of association, to pay a stipulated sum to the designated beneficiaries of its deceased members, who shall be *"one or more of the family of the member,* or some person related to him by blood, or shall be *dependent* upon him for support." The plaintiff was incorporated in 1882 under article 10, chapter 21, of the Revised Statutes of Missouri (1879), entitled "Benevolent Associations." By section 972 of the article the plaintiff was authorized to provide "for the relief and aid of the *families,* widows, orphans, or other dependents," of its deceased members. In the revision of 1889 the section was amended by inserting the word *"kindred"* before the word dependents, making that clause of the section read "families, widows, orphans, or other *kindred* dependents of deceased members," etc. R. S. 1889, sec. 2823. On the seventh day of October, 1886, Nelson McKinstry became a member of the plaintiff's order and received a benefit certificate for $2,000, payable to his wife, Katherine McKinstry. Katherine died in 1892, and on the fifteenth of May, 1892, Nelson McKinstry surrendered his old certificate and received a new one payable to Harry McKinstry, the defendant in error, who was designated in the certificate as the adopted son of Nelson McKinstry. On October 8, 1894, Nelson McKinstry died, being a member in good standing of the organization. After his death Harry, through his guardian, made demand on the plaintiff for the insurance money. Edward McKinstry, one of the plaintiffs in error and a son of the deceased, notified the plaintiff that the designation of Harry as beneficiary was illegal under the laws of the order and of the state of Missouri, in that Harry had never been legally

adopted by the deceased, and that, as he (Edward) was the only child and heir of the deceased, he was entitled under the laws of the order to receive the entire fund. Mattie McKinstry, the other plaintiff in error, claimed to be the widow of the deceased, and as such was entitled to share the fund equally with Edward, of which she also notified the plaintiff.

The plaintiff, being beset with these conflicting claims, filed in the circuit court the present bill of interpleader, asking for permission to pay the fund into court, and that the rival claimants be summoned to appear and interplead for it. The claimants were summoned, and the plaintiff, having paid the money to the clerk of the circuit court, was finally discharged. The three claimants thereupon filed their respective interpleas setting forth their title to the money, and, the issues having been made thereon by answers and replies, the matter was submitted to the court and the money was decreed to be paid to Harry. To reverse that judgment Edward and Mattie have sued out this writ of error.

On the hearing Harry McKinstry introduced evidence tending to prove these facts: When he was fourteen months old, his father and mother died. He was without near kindred, and for three or four months thereafter he was cared for by Felix J. Francis, a neighbor and friend of his father and mother, when Nelson and Katherine McKinstry asked Francis to give him to them, agreeing that they would adopt him as their son and would care for him as such. This was done, and from that time until within three months of the death of Nelson McKinstry he lived in and was recognized as a member of the family, was clothed and sent to school, and given the name of Harry McKinstry, and he did not know that he was not the son of Nelson and Katherine until he was about twelve years old.

After he got large enough to work he was hired out by Nelson McKinstry, who received his wages, and during the lives of Nelson and Katherine the most affectionate and cordial relations existed between them all. After Katherine died Mattie McKinstry, who was then known as Mattie McBain, was engaged by Nelson McKinstry as his housekeeper. After a stay of three months she and McKinstry assumed the relation of wife and husband without the formality of a legal ceremony, to which Harry, who was then about seventeen years old, objected. From that time there was strife between Mattie and Harry. About three months before McKinstry died he suggested to Harry that, as he was not able to send him to college, he had better learn a trade, and for that purpose he had better go to Washington City and work under his brother (who is a mechanic), and after he learned the trade he could return to his home. This was agreed to, and it was also agreed that Harry should send to McKinstry $5 out of his monthly wages, which he did. It was conceded that Harry had never been legally adopted.

On the part of Edward McKinstry it was shown that he was the only child of Nelson McKinstry. He is a son of Nelson McKinstry's first wife, who is long since dead. As far as the record disclosed, Edward has not lived with his father for more than twenty-one years. The most intimate friends of Nelson did not know that he had a child.

Mattie McKinstry introduced evidence tending to prove that, about three months after she went to live with the deceased, he proposed that they should live together as husband and wife, to which she assented, and that from that time he introduced her as his wife and she assumed and performed all the duties of a wife, and continued to live with him until his death.

Edward and Mattie together introduced evidence

tending to prove that Harry left home against the will of Nelson McKinstry, and with the avowed purpose and intention of remaining away permanently.

To entitle Harry to recover it must appear either that he was a member of the family of the deceased, or was a kindred dependent of the deceased. The admission that no deed of adoption was executed prevented him from taking as an heir, and therefore, if he does not fall within one or both of the classes mentioned, the judgment can not stand. It is clear that he was a dependent, but not a *kindred* dependent of Nelson McKinstry. It is insisted, however, by his counsel that, as he could have lawfully been named as a beneficiary at the time the insurance contract was entered into, the subsequent change in the statute could not have a retrospective operation. It may be true that the statute as amended could not affect existing designations, but all subsequent designations or changes of the beneficiaries must conform to it, as it must be considered as an amendment to the charter of every such corporation previously incorporated under the article. As the designation of Harry as a beneficiary occurred subsequently to the amendment of the statute, his right to take must be governed by it, and, as he was in no wise related to the deceased, he can not take as a dependent.

Was Harry McKinstry a member of the family of the deceased within the meaning of the statute, is a question of greater difficulty. The word "family" is of flexible meaning; hence the great diversity of opinion as to who compose the members of a family. The question has often arisen in exemption or homestead cases, or in the construction of wills. Some cases incline to a strict or narrow meaning, and limit the members of a person's family to those whom he is under a legal or moral obligation to support. Notably among these are

the cases of *Mullins v. Looke* (Court of Civil Appeals of Texas), 27 S. W. Rep. 928, and *Roco v. Green*, 50 Tex. 483. In the *Mullins* case the claimant of the homestead was a widower without children of his own. He had taken an orphan boy to raise, but had not legally adopted him. The boy was in no way related to him. It was held that the claimant was not the head of a family within the meaning of the constitution of Texas, as he was under no legal or moral obligation to support the boy for whose benefit the homestead was claimed.

The case of *Carmichael v. Northwestern Mutual Benefit Association*, 51 Mich. 494, fairly represents the other line of decisions, in which the word "family" is given a broader and more liberal meaning. There the plaintiff claimed to be the legal beneficiary of a policy of insurance issued upon the life of a deceased member of the defendant's order. The statute of Michigan confined the beneficiaries in such certificates to the family of the deceased member, or to his heirs. The plaintiff was not related to the deceased by blood or marriage, neither had she been adopted by him; hence her designation as beneficiary could not be sustained as an heir of the deceased. But she had lived in his family from her early youth, and she had been treated by the deceased in every respect as a daughter, and she had looked to him for support and protection. The supreme court said that the word "family may mean the husband and wife, having no children and living alone together, or it may mean children, or wife and children, or blood relations, or any group constituting a distinct domestic or social body." It was held that the plaintiff was a member of the family of the deceased, the court making the observation that there was nothing in the word "family" as used in the statute implying a narrow sense, and the court not being in-

clined to attribute one where the result would cause injustice.

So in the case of *Carpenter v. United States Life Ins. Co.*, 28 Atl. Rep. 943, the plaintiff, who was named as the beneficiary in a policy of insurance, was in no manner related to the assured, but she had lived for a long time in his family and he had in all respects assumed the responsibilities of a father to her; and it was held by the supreme court of Pennsylvania that she had an insurable interest in his life.

In *Bell v. Keach*, 80 Ky. 42, the appellee claimed exemptions as the head of a family. He had lived with a woman for twenty years, and had by her an illegitimate son. Held, that he was a housekeeper and entitled to his exemptions.

In the case of *Story v. Williamsburg Ins. Co.*, 95 N. Y. 474, the plaintiff was named as beneficiary in a policy of insurance issued by the defendant company on the life of one of its members. She was designated as the wife of the member. The plaintiff and deceased had lived together as husband and wife for sixteen years and had several children, but it was disclosed at the trial that during the time he had a wife in England from whom he had not been divorced, and who was still living. The plaintiff knew nothing of this, but supposed that she was a lawful wife. The court of appeals of New York declared, in substance, that the appropriation of the fund for the benefit of the plaintiff and her children did not contravene the policy or objects of the association as declared in the constitution and by-laws, which were "to provide relief for the widows, orphans, and heirs of the deceased members."

The rule to be deduced from these decisions is that a person's family may consist of those whom he or she is equitably bound to support, which seems to be more

in harmony with the utterances of the courts of our state than the rule declared by the Texas court. The supreme court in the case of *Whaley v. Whaley*, 50 Mo. 577, said: "It is evident that the real question in this case is, who are to be considered members of the family within the meaning of the law. Family in a limited sense signifies the father, mother, and children. In a more extended sense it comprehends all the individuals who live under the authority of another. The provisions of the law are founded in humanity, and should be liberally construed. No given rule can be laid down which will apply to each particular case." In *Duncan v. Frank*, 8 Mo. App. 286, this court said: "A family is a collective body of persons who live in one house, under one head or manager. The relations between them must be of a permanent and domestic character, not that of those abiding temporarily together as strangers. There can be no doubt that one who, with his sister, keeps house for his younger brothers and sisters, thus partly contributing to their support, is the head of a family under the exemption laws, though neither a husband nor a father, and though the children are not wholly dependent upon him."

Now, in the present case, it is shown that Harry was delivered to Nelson and Katherine McKinstry upon a promise made to Francis that they would adopt him and would rear and educate him as if he were their own son, all of which they did, except that Nelson neglected to execute the deed of adoption. Under these circumstances we think that Harry became a member of the family of McKinstry, as the latter was under an equitable, if not a legal, obligation to support him during his minority, and, therefore, his designation as beneficiary in the certificate of insurance was not a

Ins. Co. v. Irwin.

perversion of the objects of the defendant's order, nor in contravention of the statute.

But it is urged that, as such a contract of insurance is testamentary in its character and speaks only from the death of the assured, Harry can not, under the authority of *Order, etc., v. Koster*, 55 Mo. App. 186, claim the fund for the reason that, three months prior to the death of McKinstry, he had gone to Washington City to live permanently, and hence was not a member of the family at the date of the death of the assured. Upon this question of fact the evidence was conflicting, and we are not disposed to interfere with the conclusion reached by the trial judge. He had the witnesses before him, and is the better judge of their credibility and the weight to be given to their testimony.

With the concurrence of the other judges, the judgment of the circuit court will be affirmed. It is so ordered.