LUELLA F. BUSH, Appellee, v. MODERN WOODMEN OF AMERICA, Appellee, EDWARD K. BEAN et al., Interveners, Appellants.

INSURANCE:     Fraternal Benefit Certificate—Designating Bene-
1, 7  ficiary—Statutory Control.   The right to designate who shall be the beneficiary under a certificate of insurance of a fraternal benefit society is controlled by the law in force at the time the designation is made.   In other words, he who takes out a certificate of insurance at a time when no law or rule limits him in his selection of a beneficiary, cannot, when later changing the beneficiary, ignore the law which *then* says whom he may select as his beneficiary.

PRINCIPLE APPLIED:   One Bean took out his certificate in January, 1888, designating his wife as beneficiary.   At this time, he had the right, had he seen fit to exercise it, to designate a relative by affinity as his beneficiary.   In June, 1893, the law under which the society was authorized was amended by providing that a "relative," in order to be an eligible beneficiary, must be a blood relative.   The society in question, in 1895, so changed its by-laws as to bring them into harmony with this change in the statute law.   The wife having died,

Bean, in September, 1904, surrendered his certificate, and in return received a new certificate, in which he designated as his joint beneficiaries a niece by blood and a niece by marriage. In August, 1905, this second certificate was surrendered, and a third one issued, in which the niece by marriage was named sole beneficiary. The second and third certificates provided that the new certificate should issue in lieu of and subject to the conditions of the original contract. *Held*, the law governing the eligible class of beneficiaries on the date of the two last certificates governed, and the designation of the niece by marriage was futile, and she was ineligible to take anything under the policy.

INSURANCE: Fraternal Benefit Society—Ineligible Beneficiary—Waiver—Ultra Vires. A fraternal benefit society cannot waive the ineligibility of a beneficiary named in a certificate of insurance, when the eligibility of persons to be legal beneficiaries is fixed and declared by the statute to which the society owes its existence.

PRINCIPLE APPLIED: In addition to the facts under No. 1, the society had full knowledge that the beneficiary was not a blood relative. With such knowledge, it issued the certificate, received the assessments thereon from the beneficiary, and called on her for additional proofs of death. *Held*, the above principle must be applied.

INSURANCE: Ineligible Beneficiary—Intervention by Heirs. One who is the beneficiary named in a certificate of insurance in a fraternal benefit society, cannot recover unless he belongs to the class which is permitted by law to be legal beneficiaries; and it will avail him nothing to retort that the heirs, who question his right to be a beneficiary, had nothing to do with the contract, are not privy thereto, and have no contractual rights with either party.

INSURANCE: Joint Eligible and Ineligible Beneficiaries—Surrender by Eligible Beneficiary—Effect. An ineligible beneficiary under a fraternal benefit certificate of insurance cannot sustain her right to recover under the certificate because of the fact that, under a former but surrendered certificate, such ineligible beneficiary was a joint beneficiary with one who was eligible, such eligible beneficiary having waived all her right under such other certificate, and consented that her joint but ineligible beneficiary should keep up the assessments. Such arrangement cannot be tortured into an "assignment."

INSURANCE: Fraternal Benefit Society—Beneficiary as Dependent

—"Dependent" Defined. A "dependent," within the meaning of the law which permits a dependent to be an eligible beneficiary under a fraternal benefit certificate of insurance, means (a) one who is dependent on the holder of the certificate, for support, maintenance, and assistance in some material degree, and (b) one who holds such relation to the certificate holder that such holder is under obligation, moral, legal, or equitable, to furnish such support, maintenance, or assistance.

PRINCIPLE APPLIED: The beneficiary was 43 years old, was a niece of the wife of deceased, and had lived with deceased from childhood until deceased moved to California. Three years prior to this, she was married. She had two children. Her husband was a clerk in a store, and later a partner in a store. The husband owned a home which cost him $750. Plaintiff was supported by her husband. They had had much sickness and hospital expense. Plaintiff had always paid the assessments on the certificate. (Plaintiff testified to a series of contributions in money made to her by the deceased, amounting to $180, but this was held incompetent, and excluded.) *Held*, plaintiff was not shown to be a "dependent."

WITNESSES: Fraternal Benefit Certificate—Beneficiary—Transactions with Deceased Certificate Holder. One who, as a beneficiary under a fraternal benefit certificate, seeks to recover as a "dependent" of the certificate holder, is incompetent, in order to establish her dependence, to testify as to advancements made to her by the deceased certificate holder.

INSURANCE: Fraternal Benefit Certificate—Designating Beneficiary—Statutory Control.

PLEADING: Matters Specially Pleadable—Decision of Foreign State—Evidence—Judicial Notice. He who claims a right under a foreign statute, and that the courts of such state have construed such statute, and that such decisions are binding on this court, must plead and prove such decisions; and, in the absence of such plea, such decisions will be treated as persuasive only.

INSURANCE: Fraternal Mutual Benefit—Change of Beneficiary—Conditions. Principle recognized that the right of an insured in a fraternal beneficiary certificate of insurance to change the beneficiary is subject to no conditions except (a) the statutes under which the society is organized, and (b) the laws of said society.

*Appeal from Allamakee District Court.*—W. J. SPRINGER,
Judge.

APRIL 9, 1915.

SUPPLEMENTAL OPINION ON REHEARING, APRIL 3, 1917.

REHEARING DENIED JANUARY 15, 1918.

ACTION on a certificate issued by the defendant, The
Modern Woodmen of America, to plaintiff. Intervention
by nephews of deceased, on the ground that plaintiff was in-
eligible as dependent.—*Affirmed on plaintiff's appeal; re-
versed on interveners' appeal.*

*Redmond & Stewart* and *D. J. Murphy,* for appellants.

*Burt Hendrick, W. S. Hart,* and *Truman Plantz,* for ap-
pellee.

GAYNOR, J.—This is a suit in equity,
1. INSURANCE: brought by the plaintiff, upon a certificate
fraternal bene-
fit certificate: issued by the defendant Modern Woodmen
designating
beneficiary: of America to one W. D. Bean, in which
statutory
control. she was named as beneficiary. The inter-
veners are the heirs of W. D. Bean, and they claim the pro-
ceeds because of alleged ineligibility of the named benefi-
ciary, the plaintiff.

The society admits liability, but expresses doubt as
to the party entitled to the funds, filed an answer to that
effect, and paid the money into court after suit was begun,
without interest. The controversy is between the plaintiff
and the interveners. The court found in favor of the plaintiff,
but did not allow her interest on the funds paid into court
by the defendant company. The interveners appeal from
that portion of the decree finding plaintiff entitled to the
fund. The plaintiff appeals from the portion of the decree
denying her interest upon the fund. The interveners, hav-
ing appealed first, will be treated as appellants.

The record discloses that there were three certificates issued at different times by this defendant company to W. D. Bean. In the first certificate, his wife was made beneficiary. This certificate was issued in January, 1888. Subsequently, Susan F. died, and a new certificate was issued, at his request, in which the plaintiff and one Hattie Wier were named as beneficiaries. Upon the issue of the second certificate, the first certificate was surrendered to the company. Subsequently, on the request of W. D. Bean, a third certificate was issued, in which the plaintiff alone was made beneficiary. Upon the issue of this certificate, the second certificate was surrendered to the company. To these facts we will advert more fully later in this opinion.

The defendant society was organized and incorporated in the state of Illinois, on the 28th day of April, 1884, under the provisions of the law of the state as found in an act passed by the general assembly, and approved June 18, 1883. This act, among other things, provides:

"Associations or societies, for the purpose of furnishing life indemnity or pecuniary benefits to the widows, orphans, heirs, or relatives by consanguinity or affinity * * * where members shall receive no money as profits, and where the funds for the payment of such benefits shall be secured in whole or in part, by assessments upon the surviving members, may be organized, subject to the conditions hereinafter provided."

In 1887, this act was amended by the general assembly of Illinois, so as to provide, among other things, that corporations, associations, or societies, for the purpose of furnishing life indemnity or pecuniary benefits, upon the death of a member, to the widows, heirs, relatives, legal representatives, or designated beneficiaries of such deceased member, where the member shall receive no money as profits, and where the funds for the payment of such benefits shall be secured in whole or in part by assessments of the surviv-

ing members, may be organized, subject to the conditions hereinafter provided.

At the time the defendant society was organized, on the 29th day of April, 1884, it adopted articles of incorporation, under the provisions of the law of the state as found in the act of the general assembly approved in June, 1883. The articles of incorporation provide as follows:

"The object for which this corporation is formed is for the purpose of furnishing life indemnity or pecuniary bene-fits to the widows, heirs or relatives by consanguinity or *affinity*, devisees or legatees of deceased members."

These are the acts of the general assembly in force at the time the first certificate was issued, and these are the provisions of the articles of incorporation at that time, touching who should be beneficiaries under a certificate issued by the defendant company.

In January, 1888, while these laws of the state and the organization were in force, a local lodge or camp was established by defendant society at Waukon, Iowa, and W. D. Bean became a member thereof, and there was issued to him a certificate in which his wife, Susan F. Bean, was named as beneficiary. This certificate, so far as material provided:

"Head Camp, Modern Woodmen of America.

"This certificate, issued by the Head Council and the Head Clerk, of the Modern Woodmen of America, by its authority; Witnesseth: That Neighbor W. D. Bean, a member of Jewell Camp, No. 327, located at Waukon, Iowa, is, while in good standing in this Fraternity, entitled to participate in its benefit fund to an amount not exceeding $2,000, which shall be paid at his death, to Susan F. Bean, wife, by its Head Camp, subject to all the conditions on the back of this certificate and named in its fundamental laws, and liable to forfeiture if said Neighbor shall not comply with said conditions, laws and such by-laws and rules as are

or may be adopted by the Head Camp or Local Camp of which he is a member."

While this certificate was in full force, issued as aforesaid under the laws of 1883, amended by the laws of 1887, hereinbefore referred to, and while the beneficiary therein named was still living, the legislature of Illinois, on the 23d day of June, 1893, passed an act entitled "An Act to provide for the organization and management of fraternal beneficiary societies for the purpose of furnishing life indemnity or pecuniary benefits to beneficiaries of deceased members," which provided:

"Section 1. Be it enacted by the People of the State of Illinois, represented in the general assembly: That a fraternal beneficiary society is hereby declared to be a corporation or association, formed, organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit. Each society shall have a lodge system, with ritualistic form of work and representative form of government, and shall make provisions for the payment of death benefits and may, in addition thereto, provide for the payment by local lodges of benefits in case of sickness, disability or old age of its members, subject to their compliance with its constitution and laws. The fund from which the payment of such benefits shall be made, and the fund from which the expenses of such association shall be defrayed, shall be derived from assessments or dues collected from its members. Payment of death benefits shall only be made to the families, heirs, blood relations, affianced husband or affianced wife, of, or to *persons dependent* upon, the member; and such benefits shall not be willed, assigned or otherwise transferred to any other person. All such societies shall be governed by this act, and shall be exempt from the provisions of all insurance laws of this state, and no law hereafter passed shall apply to them, unless they be expressly designated therein.

"Sec. 2. All such societies coming within the description as set forth in Section 1 of this act, organized under the laws of this or any other state, province or territory, and now doing business in this state, shall be considered duly organized and may continue such business: Provided, that they hereafter make application for such permission and comply with the provisions of this act regulating annual reports, and the designation of the Auditor of Public Accounts as the person upon whom process may be served as hereinafter provided."

This act was approved June 22, 1893.

After the passage of this act, the defendant association, in 1895, passed the following by-law, and this is the first by-law of the society which contained restrictions as to the designation of a beneficiary:

"Benefit certificates shall be made payable only to the family, widow, heirs, blood relations, affianced wife, or to persons *dependent* upon the member, and to such others as may be permitted by the laws of the state of Illinois, as the applicant shall designate in his application. If a member in good standing at any time desires a change in the name of his beneficiary or beneficiaries, he shall pay to the Local Clerk a fee of fifty cents, and deliver to him his benefit certificate, with written surrender on back thereof, and directions as to the change desired in the name of beneficiary. The Local Clerk shall then forward the same, with said fee of fifty cents, to the Head Clerk, who shall thereupon issue a new benefit certificate as requested."

In 1897, the association passed another by-law as follows:

"Benefit certificates shall be made payable only to the family, widow, heirs, blood relations, affianced wife, or persons *dependent* upon the member, and to such others as may be permitted by the laws of that state of Illinois, and whom the applicant shall designate in his application."

The same provision was incorporated in the by-laws of 1899. Up to this time, the society had not amended its articles of incorporation.

Susan F. Bush, the original beneficiary, died; and in September, 1904, for the purpose of naming new beneficiaries, Bean filled out and executed a blank on the back of his certificate, headed, "Change in devisee or amount," and to that end, and for that purpose, returned the original certificate to the company, with the following endorsement on the back:

"I, W. D. Bean, the Neighbor to whom this certificate was issued, do hereby cancel and surrender this certificate in order that a new one be issued and that the benefit be of the amount of $2,000 and shall be made payable to Mrs. Luella F. Bush and Mrs. Hattie Wier who bear the relationship to myself of nieces and heirs."

Before this second certificate was issued, however, the word "heirs" was erased from the endorsement on the back, by the defendant company, and the certificate was issued in substantially the same words as the original certificate, except that it provided that payment should be made to Mrs. Luella F. Bush and Mrs. Hattie F. Wier, $1,000 each, related to said member in the relationship of nieces. This certificate was dated September 15, 1904, and delivered to W. D. Bean soon thereafter. On the back of this certificate was endorsed the following, signed by the Head Clerk:

"The original certificate, in amount of $2,000, bearing number corresponding herewith, issued the within named Neighbor on the January 25, 1888, was by him surrendered for cancellation Sept. 13, 1904, accompanied by his application for change in Beneficiary. This certificate issues in lieu of the original, with the express understanding that conditions recited in said member's original, and any subsequent application for membership or change, of whatever char-

acter, continues in full force and effect as conditions of this certificate."

It appears that, after this certificate was delivered, Mrs. Wier became dissatisfied with or skeptical of this association and suggested that Bean and Mrs. Bush keep it up, and that she would turn her part over to Mrs. Bush, or anyone else that cared to keep it. Thereupon, W. D. Bean notified Mrs. Bush to keep up the payments, and he would have the certificate changed, and make her sole beneficiary.

It appears that, after this second certificate was issued, some controversy arose between the defendant company and W. D. Bean in regard to the erasure of the word "Heirs," and the issuing of the certificate to him designating the beneficiaries as nieces. Thereupon, W. D. Bean wrote the head clerk of the defendant association, informing the company that Mrs. Luella F. Bush was not a blood relative of his; that she was only a niece of his late wife's; but that she was his heir, and that he would like to have her hold the proceeds in the event of his death, and asked whether it would hold good in the designation made of her as his niece; and in that letter stated the facts of his relationship to Mrs. Bush in the following words:

"I raised her from childhood nearly up to the time of her marriage, and am interested in her welfare. In my application, I specified her as heir, but it does not so appear in the certificate. Mrs. Wier is my own niece, so her title is all right as it appears in the certificate."

To which the head secretary responded:

"If Mrs. Bush is not a blood relative of yours, her relation should not have been stated as that of niece. She may remain beneficiary if she is dependent upon you for support, or as a member of your family, but it will be necessary to obtain a new certificate in which her relationship is correctly stated. If she is neither a dependent or a member of your family, her name must be eliminated, but if all that is

needed is to correct the relationship of. Mrs. Bush so as to render possible her retention as beneficiary, this letter, if returned with properly endorsed certificate, will be accepted in lieu of any fee."

To this letter W. D. Dean responded, on October 24, 1904:

"I would very much like to have her retained [meaning Mrs. Bush], as she is to a certain extent, dependent upon me, not wholly it is true, but sufficiently to entitle her to a place in the certificate under that head. But if the by-laws mean anything, it means that she is eligible as heir, she will get what I have in the event of my death."

To which the head secretary responded, and advised Mr. Bean in his response that the meaning of the word "heirs" was not to be determined by the will of the member, but by the statute of the state in which he resided,—in other words, that a man's legal heirs are those among whom his property would be divided, should he die intestate. He then stated:

"If, however, Mrs. Bush is dependent upon you for support, even though she has other sources of income, she may be specified as a beneficiary under a certificate with the relationship to you of dependent, but it must be remembered that in order to be eligible for benefits, this relationship must exist at the time of your death."

To this letter, W. D. Bean responded, but added nothing to what had already been said. The relationship of W. D. Bean and the society continued, under this second certificate, with the knowledge of each, as hereinbefore set out, until the 15th day of August, 1905. On said date, he returned the second certificate to the association, with the following endorsement upon the back:

"I, W. D. Bean, the Neighbor to whom this benefit certificate was issued, do hereby surrender and request the cancellation of this benefit certificate, and order that a

*new one* shall be issued to be *in full force and effect from and after the date of issuance* thereof by the Head Clerk, and upon the conditions and subject to all of the provisions contained in my original application for membership and the by-laws of this society, in the amount of two thousand dollars, and the same be made payable to Luella F. Bush, a resident of Colesburg, Iowa, who is related to me as dependent."

This second certificate, as thus endorsed, was forwarded to the Local Camp at Waukon, and, after required endorsement by the local officers, was sent to the head office of the association at Rock Island, Illinois, where a third certificate was issued, naming Mrs. Bush as sole beneficiary, and designating her relationship to W. D. Bean as dependent. This is the certificate sued on. It was then forwarded to W. D. Bean, and he turned it over to Mrs. Bush; and thereafter, all assessments were paid in full by her, and the certificate kept in force until Bean's death, in March, 1909.

It is apparent, therefore, that, at the time this certificate sued on was issued by the defendant company, and prior thereto, the local lodge and its officers had full knowledge of the relationship existing between Mrs. Bush and Bean; that the head clerk and chief administrative officer of the company at Rock Island knew, before and at the time this certificate was issued, that Mrs. Bush was not a blood relative of Bean's, but a niece of his deceased wife's, and had been informed by Mr. Bean, before the certificate in suit was issued, that Mrs. Bush was not wholly dependent upon him.

It was further stipulated in the record that the officers and members of the Local Camp knew that, upon W. D. Bean's removal from the state, plaintiff did not move with him, but remained at Waukon until her marriage with J. A. Bush, and that, since her marriage, she has lived at Colesburg, Clayton County, Iowa; and the record discloses that,

since her marriage, she has lived with her husband.

It appears that, from the time Mrs. Bush was eight or nine years old, she lived in and was supported as a member of the family of W. D. Bean; that, after her marriage with Bush, the only occupation she had was that of housekeeper; that she had two children; that her husband first clerked in his father's store; that he clerked for about five years of their married life; that he afterwards became a partner in the store, and was a partner at the time this trial was had; that she was supported by her husband in his family; that, in 1903, plaintiff's husband purchased an interest in a stock of general merchandise; that he purchased a home, which cost him about $750; that, during some portion of the time since this certificate was issued, the plaintiff's husband has been sick in a hospital, and submitted to operations for appendicitis and for trouble with his stomach; that the plaintiff has been sick and under a doctor's care, and also submitted to an operation.

As to being a dependent upon W. D. Bean, plaintiff testified as follows:

"Q. You may state whether or not you were to any extent dependent upon W. D. Bean after his removal to California. A. Yes. I have a record of what he contributed to my support. I received $20; on August 22, 1906, $25; June 13, 1907, $20; Nov. 29, 1907, $20,—had this to help pay for my coat; April 19, 1908, $20, with papers and magazines; August 6, 1908, $25, birthday present; November 18, 1908, $25; January 14, 1909, $25."

She further stated that she had received from W. D. Bean, from the 1st of January, 1906, to January 14, 1909, $180, and that these contributions were necessary for her support; that they were made to her personally; that she and her husband had a great deal of sickness.

These are practically all the facts upon which this case is submitted for our determination.

The plaintiff assumes four distinct positions upon which she predicates a right to have the judgment of the district court affirmed.

1. That Mrs. Bush in the third certificate and Mrs. Bush and Mrs. Wier in the second certificate were lawful, eligible beneficiaries, duly named and accepted as such by the society; that their designation was not contrary to the law of either this state or the state of Illinois; that it was in strict compliance with the charter and by-laws of the society; that Bean's right to name and change beneficiaries was a substantial right, a vested element of his contract at the time the original certificate was issued, and that this continued from the origin of his membership until his death, and that this could not be taken away by any subsequent by-laws, charter amendments, or statutory enactments; that, in the issue of each of these certificates, the society imposed the express condition that the new certificate should issue in lieu of and subject to all the conditions of the original contract.

2. That the society, at its head office, and through officers of the Local Camp, at all times had knowledge of the relationship of Mrs. Bush to Bean, issued the certificate to her with that knowledge, received from her the dues upon the certificate, called on her for additional proofs of death, and thereby waived all questions as to eligibility.

3. That the interveners were not privy to any contract, and have no contractual rights with either party to the certificate, and, therefore, cannot litigate the question, which is a question purely between the society and the plaintiff, cannot plead *ultra vires* or question the acts of the society in waiving the conditions prerequisite, and cannot interpose any defenses not raised by the society, or which have been waived by the society.

4. That Mrs. Bush was entitled to the fund as assignee of Mrs. Wier, sole, eligible beneficiary in the second certifi-

cate, by virtue of an assignment made by Mrs. Wier to her.

Plaintiff's contention on the first proposition is that the law in force at the time plaintiff became a member of the association, and at the time the first certificate was issued, to wit, the laws of 1883 and 1887, governed the plaintiff's right in this case. Under these laws, she was eligible as a beneficiary. She was a relative of Mr. Bean's by affinity.

The contention of the plaintiff is that, inasmuch as Bean became a member of this organization at a time when plaintiff was eligible to be named as beneficiary, his right to select her as beneficiary continued after the passage of the laws of 1893, the theory being that the right to freely name and change his beneficiary in accordance with and under this law was a substantial element of and a vested right under Bean's original contract, when he became a member; that this right was vested in Bean, and not in the beneficiary, and that it was beyond the power of the legislature, by any statutory enactment, and beyond the power of the society, by any by-law, to take this right away.

It is true that, at the time Bean became a member of this society, he had the right to name a beneficiary, and to designate the beneficiary in the certificate issued to him at that time. He exercised this right, and named his wife. Subsequently, his wife died, and he undertook to name another beneficiary; and, in the meantime, the law had been changed, and this plaintiff was no longer entitled to be named as beneficiary, except as a dependent or a member of his family. This was the law that governed the society at the time he undertook to exercise this right to name a beneficiary after his wife's death. In conformity with this law, the society had adopted a by-law, in 1895, containing the same conditions and limitations upon the right to name a beneficiary that were found in the laws of 1893. All this was before his wife's death, and while the original certificate was in full force.

. When he surrendered this first certificate, it was for the purpose of having it cancelled. It was cancelled, and a new certificate issued, naming Mrs. Wier and Mrs. Bush as beneficiaries. Mrs. Wier was a relative by blood, being the niece of Bean, and was, therefore, eligible as a beneficiary. Mrs. Bush was not related by blood, and therefore was not eligible except under the clause making dependents or members of the family entitled to receive benefits.

The right to select a beneficiary was given at the time Bean became a member. Then he was limited in the exercise of his right to those who were eligible as beneficiaries. When he undertook to exercise his right, after the death of his wife, the right still continuing, he was then limited in his selection to those who were eligible under the law as it then stood. The law of 1893 did not attempt to take away his right to name a beneficiary in the case of the death of his wife, but provided a class from which selection should be made, providing a class who were eligible to participate in the funds. This was not retroactive, but related to and controlled his action only at the time of its exercise.

The Supreme Court of the state of California, in the case of *Caldwell v. Grand Lodge of A. O. U. W. of Cal.,* 148 Cal. 195 (2 L. R. A. [N. S.] 653), said (in this case, Baker surrendered the certificate while the amended by-law was in force) :

"It is, however, contended that, as Baker became a member of the order at a time when its by-laws permitted him to have the certificate issued in favor of any person, a subsequent change in the by-laws limiting the classes of persons to whom such certificate could be issued was an impairment of his contract, and thereby void as to him and as to the certificate actually issued in favor of this plaintiff. It is unquestionably true that, in a policy of life insurance, a designation of a beneficiary valid in its inception remains

so, although the insurable interest or relationship of the beneficiary has ceased, unless otherwise stipulated in the contract. *Courtois v. Grand Lodge, A. O. U. W.*, 135 Cal. 557 (87 Am. St. Rep. 137, 67 Pac. 970) ; *Wist v. Grand Lodge, A. O. U. W.*, 22 Ore. 271 (29 Am. St. Rep. 603, 29 Pac. 610). But such is not the proposition here presented. This principle would have been applicable, if refusal had been made by the order after the passage of its amended by-law to pay the certificate in favor of the Humboldt Savings & Loan Society, which was a valid certificate to that institution at the time of its issuance. In this case, Baker surrendered that certificate, and, while the amended by-law was in force, caused a new certificate to be issued to a person who, under the by-law, was not entitled to it. Baker had not been compelled to designate a new beneficiary, but, having voluntarily undertaken so to do, could he, or could he not, designate a beneficiary not contemplated by the by-law then in force? We entertain no doubt that this he could not do. Baker joined the order, agreeing specifically to abide by and conform to the by-laws in force subsequently to be adopted. His compliance with such laws as were then in force, or might thereafter be enacted, was, by his express agreement, made a condition by which he was entitled to participate in the beneficiary fund of the order, and, where the contract between the member and the order is as here disclosed, it is never to be disputed that all subsequent rules, regulations, and by-laws, not in themselves unreasonable, against express law or 'public policy, enter into and govern all of his rights and relationship with the association. *Wist v. Grand Lodge, A. O. U. W.*, supra; *Masonic Mut. Ben. Assn. v. Severson*, 71 Conn. 719 (43 Atl. 192). The amended by-law in question was certainly a reasonable one, and, after it went into force, Baker had no right to name a beneficiary belonging to any other than one of the classes therein designated."

The same doctrine is supported in the case of *Grand Lodge A. O. U. W. v. McKinstry*, 67 Mo. App. 82, in which it is said:

"It is insisted, however, * * * that, as he could have lawfully been named as a beneficiary at the time the insurance contract was entered into, the subsequent change in the statute could not have a retrospective operation. It may be true that the statute as amended could not affect *existing designations*, but all subsequent designations or changes of the beneficiaries must conform to it, as it must be considered as an amendment to the charter of every such corporation previously incorporated under the article. As the designation of Harry as a beneficiary occurred subsequently to the amendment of the statute, his right to take must be governed by it, and, as he was in no wise related to the deceased, he cannot take as a dependent."

This case simply holds, on this point, that the law in existence at the time the member seeks to exercise his right to select a beneficiary, controls, and limits him to the class then eligible. Other courts hold to a different doctrine. See *Voigt v. Kersten*, 164 Ill. 314.

This disposes of plaintiff's first contention; and we therefore hold that Bean was limited in the selection of a beneficiary to the class designated in the statute at the time he undertook to exercise his right of selection.

The second proposition involves the question of waiver.

2. INSURANCE: fraternal benefit society: ineligible beneficiary: waiver: *ultra vires.*

Now, it is fundamental that a society, such as this defendant society, may waive its by-laws and any provision of its by-laws made for its management. These are the creatures of its own creation; but it does not follow from this that it can waive provisions of the statute. It is almost the universal holding that a society of this kind can waive the enforcement of a requirement embodied in the by-law; but it is elementary that a corpo-

ration such as this has no power to create a fund for persons other than the class specified in the law authorizing its organization and maintenance; and, as the corporation has no authority to create a fund for any other purpose, a member cannot direct that the fund be paid to a person outside of such class.  See *Palmer .v. Welch,* 132 Ill. 141. There are even some exceptions to the rule authorizing institutions of this kind to waive the provisions of its bylaws.  See *McCoy v. Roman Catholic Mut. Ins. Co.,* 152 Mass. 272.  See also *Cloverdale v. Royal Arcanum,* 193 Ill. 91.

To hold that a mutual, fraternal organization, such as this, may waive the provisions of the law limiting the class entitled to receive benefits, would be to effectually destroy the limitation.  All that a corporation would have to do would be to issue its certificates payable to any person, whether within the limited class or not, and, with knowledge of such fact, receive the premiums, and thereby bind itself to the payment, out of the fund provided for a certain class, to those not eligible to receive it under the law.

As bearing upon this question, see *In re Assignment Mutual G. F. Ins. Co.,* 107 Iowa 143, 148. In this case it was said:

"The doctrine of *ultra vires,* as applied to corporations, is one of the most difficult with which courts have to deal, and the rules are not as definitely settled as we might wish. Were it not for the statutes prohibiting mutual companies organized under Section 1160, from taking premiums and from doing business on the stock plan, we would be inclined to hold that, as the corporation had accepted and used the premium paid for the policy in suit, it should be estopped from pleading *ultra vires* as a defense * * * But where, as in this case, an act is prohibited by statute, the contract is illegal and void, and cannot be enforced. The rule as stated by Taylor in his work on Corporations (Sec-

tion 299) is as follows: 'If a statute expressly prohibits a corporation to make a certain contract, the contract is void, even though not expressly declared, to be so, and is incapable of ratification; and that the contract is void, as unlawful, may be pleaded by anyone to an action founded directly and conclusively on such contract; unless (1) the statutes expressly state what the consequences of violating it shall be, and those consequences are other than that the contract shall be void; or (2) unless the statutory' prohibition was evidently imposed for the protection of a certain class of persons, who may alone take advantage of it; or (3) unless to adjudge the contract void and incapable of forming the basis of a right of action would clearly frustrate the evident purposes of the prohibition itself."

See *Crocker v. Hogin*, 103 Iowa 243; *Mullen v. Woodmen of the World*, 144 Iowa 228; *Lucas v. White Line Transfer Co.*, 70 Iowa 541; *Krause v. Modern Woodmen*, 133 Iowa 199. See also *Modern Woodmen of America v. Comeaux*, 79 Kan. 493 (101 Pac. 1, 25 L. R. A [N. S.] 814.) This was an action on a certificate issued to one who was not eligible, under the law, to become a beneficiary. As to the plea of waiver, the court said:

"The plaintiff further claims that the clerk of the local camp, to whom assessments were paid, knew the relations between plaintiff and the deceased, and that the receipt by him of the assessments after the change in the name of the beneficiary amounted to a waiver of the fact that plaintiff did not belong to the class of persons who could be made beneficiaries. There are many things that can be waived by an association of this character, but this is not one of them. The statute expressly and positively prohibits the payment of benefit fund to any person who is not within the class designated as beneficiaries. This law cannot be repealed by the conduct of the clerk of a local camp.

In our view, the plaintiff was not dependent upon Carl W. David, and therefore he was not entitled to be named as a beneficiary; and the fact that his name was placed in the benefit certificate does not confer upon him any right to the fund."

In *Loyd v. Modern Woodmen of America*, 113 Mo. App. 19 (87 S. W. 530), the Supreme Court of Missouri said, in substance, that, although the company was organized in Illinois, under the laws of 1883, and by that law was authorized to issue benefit certificates for the benefit of legatees of its members, yet, in 1893, the law was amended, restricting the benefit to families, heirs, blood relatives, affianced husband, or affianced wife, or to persons dependent upon a member; that, when the company accepted this amendment to the law, it thereby abrogated its right to issue certificates to legatees of its members, or to any other persons than those designated in the law itself. This pronouncement has reference to the action of the association in passing its by-law heretofore referred to, conforming to the requirements of the statute, and limiting beneficiaries to those named in the statute of 1893. See also *Pilcher v. Puckett*, 77 Kan. 284, reported in 94 Pac. 132, and 17 L. R. A. [N. S.] 1083) as *Modern Woodmen of America v. Puckett; Baldwin v. Begley*, 185 Ill. 180 (56 N. E. 1065); *Ross v. Modern Brotherhood of America*, 120 Iowa 692; *Steele v. Fraternal Tribunes*, 215 Ill. 190.

It follows that, if the defendant society had no authority to issue certificates to its members payable upon their death to anyone other than those designated in the statute and entitled to be beneficiaries, its act in so doing was *ultra vires*. Neither the association nor the fund became bound in any way to the party named, because not within the designated class; and no action of the society could ratify or affirm that which it had no original authority to do. Nor could it waive these provisions of the statute, and indirectly

accomplish what it could not do directly. To authorize a society to so do would be to emasculate the statute and render nugatory those provisions limiting the class entitled to participate in the fund.

This disposes of plaintiff's second contention.

3. INSURANCE: ineligible beneficiary: intervention by heirs.

Plaintiff's third contention, that the interveners are not privy to any contract, and have no contractual rights with either party, and therefore cannot litigate the question, which is purely between the society and the plaintiff, is not well taken. The plaintiff cannot recover in this action unless she is within the class entitled to participate in the fund.

4. INSURANCE: joint eligible and ineligible beneficiaries: surrender by eligible beneficiary: effect.

We think there is nothing in the fourth claim, that she is entitled to recover as assignee of Mrs. Wier. The certificate under which Mrs. Wier might have claimed $1,000, was, with her consent, surrendered to the company, cancelled, and a new certificate issued. She had no vested right in that certificate. It was surrendered to the company voluntarily by Mr. Bean. At the time of his death, she had no certificate, and no right to participate in the fund, and nothing to assign to Mrs. Bush.

5. INSURANCE: fraternal benefit society: beneficiary as dependent: "dependent" defined.

We come now to the last question : Is Mrs. Bush shown, under this record, to be eligible to participate in the fund, as a dependent upon Mr. Bean? This is a question of fact, to be determined from this record.

The plaintiff was named in the certificate as one to whom Bean desired that portion of the fund to be paid which was set apart to him under his certificate,—to the payment of which, upon his death, the defendant association pledged itself. The defendant does not deny that it has this fund; that it is due to someone under this certificate, someone who has a right to claim it under and through Bean. He

named Mrs. Bush as the one to whom he desired to have the fund paid. He designated her as a dependent upon him. All the facts, practically, upon which he based his right to name her as a dependent beneficiary, were known to the organization, either through its head secretary or the officers of the local lodge. She now claims it under the designation given by Mr. Bean. Her identity has been established as the person to whom Bean desired this payment to be made. She does not admit that she is not a dependent. She is not seeking to recover under some other designation than that named in the certificate. The burden, therefore, is on the association to show, and on those who seek to defeat her right, to establish, by a preponderance of the evidence, that she is not what she claims to be; that she is not what the certificate designates her to be; that she is not entitled to receive the fund, under the contract made between Bean and the company, in which she was designated as beneficiary.

There has been something of a conflict in the courts as to what constitutes a dependent. Some distinction has been made between the contracts which provide that the beneficiary named must be a *legal* dependent, and those contracts in which it is only required that the beneficiary be a dependent. What does the record disclose?

Mrs. Bush was, at the time of this trial, 43 years old. She lived in Delaware County. She is the niece of Susan F. Bean, deceased wife of W. D. Bean. She made her home with Bean and his wife, as a member of their family, ever since she was eight or nine years of age. She lived with them until they moved to California, in 1893, as a member of their family; had no other home from the time she entered the Bean family, and had no other means of support, until she was married. Bean had no blood relatives nearer than nieces and nephews. Bean said, in a letter to Mr. Hancock, an officer of the local lodge:

"She [meaning Mrs. Bush] is my wife's niece. She will get whatever I may die seized of. She has been very kind and thoughtful of us in our troubles of past years, and has helped us in every way in time of need, and she is my heir. You know she was living with us up to the time we went west. She seems nearer to me than my own niece."

As soon as Bean received this certificate now in suit, he turned it over to Mrs. Bush. Mrs. Bush made all the payments on the certificate, after the death of the first beneficiary named; made these payments out of her own funds. The society had knowledge of this fact, and never questioned her rights under the certificate. She was asked this question:

"You may state whether or not you were to any extent dependent upon W. D. Bean after his removal to California."

To which she answered, "Yes." Then stated the contributions to her by Mr. Bean after his removal to California. It appears that Mr. Bean went to California in 1893. She stated that these contributions were necessary for her support; that they were made to her personally; that they had a great deal of sickness in the family; that her husband had been sick; that she had been sick, and had serious operations. It appears that Mrs. Bush was married in 1900.

There is evidence in the record suggesting the fact that the income of Mrs. Bush's husband was insufficient to support the family; that he, for many years, was unable to do manual labor; had been confined in the hospital, and subjected to an operation for appendicitis; that his sickness was the cause of large expenses incurred.

This is practically all the evidence bearing on this point.

If we sustain the objection to Mrs. Bush's

**6. WITNESSES: fraternal benefit certificate: beneficiary: transactions with deceased certificate holder.** testimony interposed by interveners, as incompetent, under Code Section 4604, there is practically no evidence as to whether she was or was not a dependent upon Bean, and we think that, under this section, she was incompetent to testify as to any personal transaction had between her and Bean.

We have, therefore, the naked facts that she was reared in the Bean family until 1893; that the Beans left and went to California; that, in 1900, she was married to her present husband; that her husband had a business of his own; that she lived with his family and received support therefrom. Therefore, under the rules laid down and recognized by the courts, she cannot be said to be a dependent upon Mr. Bean at the time this certificate was issued, or at the time of his death.

The authorities hold that, before one can recover under a certificate of this kind as a dependent, it must appear that she was dependent in some material degree for support or maintenance or assistance, and that there must be an obligation to render this, either moral, legal, or equitable. Contributions made through kindness or charitable impulses, made purely as gifts, do not establish such dependency. It is not necessarily a legal dependency, but must rest on some substantial grounds, either moral or equitable. See *Caldwell v. Grand Lodge, A. O. U. W.,* supra (2 L. R. A. [N. S.] 653); *Alexander v. Parker,* 144 Ill. 355 (19 L. R. A. 187); *Martin v. Modern Woodmen of America,* 111 Ill. App. 99; *Murphy v. Nowak,* 223 Ill. 301 (7 L. R. A. [N. S.] 393); *Royal League v. Shields,* 251 Ill. 250 (36 L. R. A. [N. S.] 208); *Goff v. Supreme Lodge Royal Achates,* 90 Neb. 578 (37 L. R. A. [N. S.] 1191).

We are satisfied, under this record, that plaintiff has not shown herself entitled to recover. The case is, therefore,

—*Affirmed on plaintiff's appeal and reversed on interveners' appeal.*

DEEMER, LADD, and SALINGER, JJ., concur.

### SUPPLEMENTAL OPINION.

7. INSURANCE:
fraternal ben-
efit certifi-
cate: designat-
ing beneficiary:
statutory
control.

GAYNOR, J.—A petition for rehearing having been filed in this case, we deem it well to submit this supplemental opinion, to the end that a fuller expression upon the controverted propositions may be given.

Upon a reconsideration and fuller discussion, it is thought by some members of the court that it is well that we should more fully state our views, at least upon one proposition upon which plaintiff predicates her right.

It is the contention of the plaintiff that, when Bean entered this society and received his certificate, he became vested with an unchangeable right to choose as his beneficiary someone who was eligible to become a beneficiary at the time the certificate issued. The argument proceeds upon the theory that, where one receives a certificate of the character here in controversy, he then becomes vested with a continuing right to name as his beneficiary any one of the parties who were, at the time of the issuing of the certificate, eligible to appointment, and that this right can neither be abridged nor taken away by the legislature, nor by the society itself. It must be conceded that the selection by the member of one eligible at the time the certificate is issued, binds the society, upon his death, to pay to the one so selected as beneficiary, even though, by reason of a change in the organic law, the person is not eligible to selection at the time of his death. As said in the original opinion, Bean, on the receipt of his certificate of membership, selected his wife as beneficiary. If she had outlived Bean, no change in the organic law as to eligibility would have affected her rights under the certificate; but she died before Bean did.

Bean surrendered his certificate and took a new certificate, appointing as beneficiary one who, though eligible at the time the certificate was issued, was not eligible at the time of the selection, and was not eligible under the then existing law either at the time of her selection or at the time of the death of Bean.

It is the universal holding that none of the parties eligible to receive appointment under a certificate of this character has any vested right to appointment by reason of such eligibility. Nor has the party, after being selected, any vested right in the certificate of which he cannot be deprived by the act of the assured. The only vested right in the certificate is in the certificate holder. His right, so far as the matter under consideration is concerned, is to nominate any of the parties within the class eligible to receive benefits. See *Supreme Tent, Knights of Maccabees v. Altmann,* 134 Mo. App. 363 (114 S. W. 1107); *Carpenter v. Knapp,* 101 Iowa 712.

The statute of Illinois is the organic law of this society. It is under this law that it lives, moves, and has its being. From this law it gets its right to do business, and by this law it is regulated and controlled.

It must be borne in mind that, as to these societies, the purpose and intent of the legislature, in creating and recognizing them, is not that they may do a general insurance business, but a fraternal business. It has been recognized that there lies in the legislature the power to limit the class which may be beneficiaries of the society. We take it that those who join these societies and receive certificates therein do this in recognition of this reserved power in the legislature from which the society gets its life and under whose restrictions it operates its business. It does not lie in the power of the society to make by-laws in conflict with the organic law under which it exists. The society could

not, in the first place, have made eligible as beneficiaries those who, under the organic law, were not eligible to be beneficiaries.

We held in the original opinion that the right to select a beneficiary under the certificate could not be taken away; but we held that, when it came to the exercise of the right, the assured was limited to the class eligible to become beneficiaries at the time he attempted to make his appointment.

It is said, however, that this is an Illinois contract, and it is urged that, inasmuch as the Supreme Court of Illinois, in the case of *Voigt v. Kersten*, 164 Ill. 314, determined that the certificate holder had a vested right to name anyone within the class designated by the statute as eligible at the time he received the certificate; this right could not be taken away or abridged by any subsequent act of the legislature. It is contended that we are bound by that decision in construing the organic law; that the statute must be interpreted and understood in the light of that decision, and the rights of the parties must be determined by it. With this contention, however, we cannot agree.

8. PLEADING: matters specially pleadable: decision of foreign state: evidence: judicial notice.

The statutes of Illinois were introduced in evidence, and are in the record before us. It is for us to construe and determine the rights of the parties under those statutes. The decision relied upon was neither pleaded nor proved. What the law of a sister state is, is a fact to be alleged and proved, like any other fact. We cannot and do not take judicial notice of it. In order that we may consider this decision as a part of this case, it should have been pleaded and proved. We take no more notice of judicial decisions of sister states than we do of the statutes of other states. To have the benefit of the statute of another state, those statutes must be pleaded and proved. If it is claimed that the court of a sister state has construed the statute, that

must be pleaded and proved.  See *Cherry v. Sprague,* 187 Mass. 113 (105 Am. St. Rep. 381).  In that case, reliance was had upon the laws of South Dakota.  Certain decisions of the Supreme Court of South Dakota were cited in the brief, and it was contended that the contract should be governed by these decisions.  The court said:

"But the bill of exceptions upon which the case is here contains no statement of these citations nor of any evidence of the law of South Dakota,    *    *    *    we cannot consider them."

See 36 Cyc. 1104 (note), in which we find this language:

"Where the statutes, but not the decisions, are in evidence, the decisions may be consulted, but are only persuasive, and not binding."

See also *Gordon v. Knott,* 199 Mass. 173 (85 N. E. 184), in which it is said:

"When, in a contest in our courts, the rights of the parties depend upon any foreign law, what that law is, is purely a question of fact, to be determined by such evidence as may be offered thereof."

And the court held that it could not consider the law of England regarding the matters, where evidence of such law is not introduced.

We hold, therefore, that the decision of the Supreme Court of Illinois relied upon in argument, not having been pleaded or proved, is only persuasive, and not binding upon us; that it leaves us to construe and apply the organic law of the society as we understand it and interpret it.

Coming back to *Voigt v. Kersten,* cited in the original opinion, 164 Ill. 314 (45 N. E. 543), both Voigt and Kersten were eligible under the provisions of the act in force at the time the certificate in question was issued; but neither was eligible as a beneficiary after the act of June, 1893.  Voigt was named at the time the certificate was issued, and at the

time deceased became a member of the order, and, at that
time, the member had a right to name Voigt
as beneficiary. The appointment of Voigt
did not exhaust his power. He subsequently
had the right to appoint another in the place
of Voigt. Until after the death of the mem-
ber, the beneficiary acquired no vested right in the fund
named in the certificate, and the right to appoint another
remained in the member during his life, without limitation
or restriction, except such as was imposed by the statute or
the laws of the order. By the act of 1893, the right of the
member to name a new beneficiary outside the class men-
tioned in that act, was taken away from the deceased. In
that case it is said:

9. INSURANCE:
fraternal mu-
tual benefit:
change of ben-
eficiary: con-
ditions.

"Neither   *   *   *   would be eligible as beneficiary un-
der the statute of June, 1893. Both or either of them were
eligible under the provisions of the act in force at the time
the certificate in question was issued, in January, 1893. The
evidence does not show that the deceased had (and it was
conceded in argument that he had not) any relatives or
connections or persons dependent upon him who would be
eligible to take under the provisions of the act of June, 1893.
Therefore, by the passage of the act of June, 1893, if the
right to name a new beneficiary outside of the class men-
tioned in that act was taken away from the deceased, then
the benefit fund must be paid to the party therein named,
*   *   *   or the fund must revert to the complainant order.
At the time the contract was made between the deceased and
the complainant order, this right to appoint the beneficiary
or change the name existed, and, we think, was an important
part of the contract entered into. It would seem that the
construction of the act passed in June, 1893, giving it the
effect to destroy that right of appointing a beneficiary or
naming another beneficiary which existed in favor of the
deceased under his contract prior to the passage of the act,

would be to give the act a retrospective effect, and destroy the obligation of the contract entered into between the deceased and the complainant."

It is therefore argued from this that the act of 1893, changing the personnel of the class eligible to appointment from that existing at the time the certificate was issued, had the effect of destroying the contractual right to appoint a new beneficiary, or to change beneficiaries. The statement seems to be bottomed on the fact that this would be the effect in this particular case, because the deceased, at the time he had made the appointment in question, did not have anyone eligible to appointment, under the law of 1893. On entering the society, it is conceded that, in the selection of a beneficiary, he was limited to the class designated in the statute. It would follow, from the argument in this case, that if, upon the receipt of his original certificate, he had no one eligible to be appointed beneficiary under the law, he might select anyone, whether eligible or not, because, upon receipt of the certificate, he was vested with the right to appoint or to change beneficiaries, and therefore this right would be defeated unless he was permitted to choose a beneficiary from those who were not eligible under the statute; otherwise, the fund must or would revert to the society. The construction of the statute seems to have been made to meet the exigencies of that particular case, and we are not disposed to follow it, although it was subsequently recognized, without discussion, in subsequent decisions of the court of that state.

The holding in that case is in direct conflict with the holding of the Supreme Court of California, in the case of *Caldwell v. Grand Lodge United Workmen of California*, 148 Cal. 195 (82 Pac. 781), cited in the original opinion, and against the holding of the Supreme Court of Missouri in *Grand Lodge A. O. U. W. v. McKinstry*, 67 Mo. App. 82, cited in the original opinion, and these, we hold, express the

better doctrine, and more in line with the scheme and purpose of organizations such as we are dealing with here. In *Grand Lodge v. McKinstry,* supra, it is said:

"To entitle Harry to recover, it must appear either that he was a member of the family of the deceased, or was a kindred dependent of the deceased. * * * It is clear that he was a dependent, but not a kindred dependent. * * * It is insisted, however, by his counsel that, as he could have lawfully been named as a beneficiary at the time the insurance contract was entered into, the subsequent change in the statute could not have a retrospective operation. It may be true that the statute as amended could not affect existing designations, but all subsequent designations or changes of the beneficiaries must conform to it, as it must be considered as an amendment to the charter of every such corporation previously incorporated under the article. As the designation of Harry as a beneficiary occurred subsequently to the amendment of the statute, his right to take must be governed by it, and, as he was in no wise related to the deceased, he cannot take as a dependent."

In *Wist v. Grand Lodge A. O. U. W.,* 22 Ore. 271 (29 Am. St. Rep. 603), it appears that the plaintiff was appointed beneficiary in a certificate issued to one Freeman, and, at the time of his appointment, was eligible under the law to become a beneficiary; that subsequently, the law was changed, limiting the persons who were entitled to become beneficiaries. After the change of the law, plaintiff was not among those who might become beneficiaries. It was claimed that he could not take, because of this change in the law. It was said that this law required the assured to name a new beneficiary, and appoint one who was among those named in the new law. The court, in passing upon this question, said:

"That law provides: 'Each member shall designate the person or persons to whom the beneficiary fund due at his

death shall be paid, who shall in every instance be one or more members of his family, or someone related to him by blood, or who shall be dependent upon him.' This language is wholly prospective in its operation. It is intended to affect the power to appoint beneficiaries, and limit its exercise after the law passed. 'Each member shall designate,' refers not to a past, but to a future act to be performed by him,— that is, whenever a member shall exercise his power of appointment under this law, he shall designate a beneficiary of the classes enumerated. It applies as well to old members, revoking a former appointment and naming another as his beneficiary, as to new or old members who have never exercised their power to appoint a beneficiary. The law does not undertake by its terms to disturb what has been done; it does not nullify previous appointments; it only undertakes to limit to the classes specified the power to designate beneficiaries, whenever it shall be exercised by a member."

It is further said in this opinion:

"It did not, by its terms, nor by implication, require him to change his policy (that is, his beneficiary then appointed). It would only have affected his contract in the event he should have revoked the appointment of the plaintiff as his beneficiary, and then only to the extent of requiring him to appoint a beneficiary that should belong to the specified classes. * * * It may be conceded that Freeman was bound by all subsequent laws enacted; but, as the law in question is not retroactive, it does not affect his contract. It only affects him or any other member of the society in the issue of certificates after its passage."

Again, it is said, speaking of the change of the law:

"It does not operate as a destruction of their power to appoint a beneficiary, or as a repudiation of the obligation of the society."

It is further said in the *Wist* case, supra:

"Except as restricted by the constitution and by-laws of the order, a member may exercise his power of appointment without other limit; he may designate as his beneficiary whomsoever he may choose, or he may change such beneficiary by designating another at his pleasure. The only limitation on the exercise of this valuable and important power is the organic law of the society, or the rules and regulations adopted in compliance therewith. During the lifetime of the member, his beneficiary has no vested interest in the fund to be accumulated    *    *    *    which would prevent him from changing such beneficiary without his consent, or which would prevent the society from changing its rules and permitting changes of beneficiaries. The laws of the society in respect to the change of beneficiaries are for the protection of its own interests and welfare, and as against such laws, the beneficiaries have no such vested rights or interest in the fund, during the life of the member, as will prevent the society from determining the course of such fund. In consequence of this right of a change of beneficiaries by the member, all that the beneficiary can have during his life is a mere expectancy, dependent upon the will of the holder of the certificate. It is these considerations that constitute the distinction between benevolent organizations, and the regular life insurance companies. This distinction has been thus expressed by Mitchell, J.: 'The essential difference between a certificate of membership in a beneficiary association and an ordinary life policy is that in the latter the rights of the beneficiary are fixed by the terms of the policy, while in the former they depend upon the certificate and the rights of the members under the constitution and by-laws of the society. In one case, the rights of the beneficiary are fixed and vested from the moment the policy takes effect; in the other, they are subject to such changes as the law of the association authorizes the member to make.

All that a beneficiary has during the life of the member, owing to his right of revocation, is a mere expectancy, dependent upon the will of the holder of the certificate.  *  *  *' Nor have the members of such societies, as such, an interest or property in the benefit fund, but simply the power to appoint someone to receive it."

It is further said that the constitution or charter and the by-laws are the foundation and source of such power.

It is true that, in the *Wist* case, the assured, in his application, agreed to comply with all laws, regulations, and requirements which are or may hereafter be enacted; but the case is not bottomed on this fact, for it is there held that the power of the society to change its laws is inherent in the society for the purpose of carrying out the objects for which it was formed; and it is said in this case:

"So that it may be said that the power to alter or amend laws, or to repeal them, when exercised in a proper way and for the welfare of the society, is an incident of its existence, and that, when so exercised, such laws are binding on its members, except when forbidden by the organic law of the society, or contrary to the laws of the land."

Quoting from Judge Elliott in *Supreme Lodge, Knights of Pythias v. Knight,* 117 Ind. 497, the opinion proceeds to say:

"We do not affirm that a benefit society may, by a change in its by-laws, arbitrarily repudiate an obligation created by a policy of insurance, but we do affirm that, where a change is regularly made in its by-laws, and the motive which influences the change is an honest one, to promote the welfare of the society, and the members are all given an opportunity to avail themselves of the change, no actionable wrong is done to the members or their beneficiaries."

It is further said:

"There is no power in the society to amend or enact laws which shall work any repudiation of its obligation. It

resides in the society-for the purposes of carrying out the objects for which it was formed."

And it was held that the new law, changing beneficiaries or limiting the class, did not work a repudiation of any of its obligations to the assured; that the assured, with all other members of the society, had a right reserved to him to select beneficiaries from the class designated, at the time he undertook to exercise his right, and that this was all that his contract gave him.

The petition for rehearing is overruled.

LADD, EVANS, and SALINGER, JJ., concur.